[PHILADELPHIA, MARCH 27, 1829.]

## BUTZ *against* IHRIE.

Time does not begin to run against a privilege reserved in a deed, until some default, negligence, or acquiescence is shown, or may be fairly presumed, in the party in whose favour such reservation is made.

Therefore a reservation of a right for the grantor his heirs and assigns, to raise, swell and dam the water of a stream, from a dam intended to be built on his own land, provided the same is not raised or swelled so high as to injure and damage the mill granted by the deed, is not barred, forfeited, or lost by the lapse of thirty-two years, from the time the right was reserved, to the time of building the dam, in pursuance of that right.

An injury to the grantor's mill-race, is an injury to his mill, for which he is entitled to damages.

Though the words of the deed be "a dam," &c., yet the substance of the reservation is of a privilege to overflow the land, without injuring the grantor's mill, and whether this be done by one dam or by more than one, is not essential.

THIS case came on for trial before the Chief Justice in the Circuit Court of *Northampton* county, at *Easton,* on the 11th of *April,* 1828.

The action was originally instituted in the Court of Common Pleas, of *Northampton* county, on the 8th of *November,* 1826, by *David Butz,* and *Daniel W. Butz,* against *Peter Ihrie* the elder, to recover damages for a nuisance caused by the defendant in the erection of a division dam, which, it was alleged, made the waters of the *Bushkiln* creek flow back upon the land of the plaintiffs, and injure their saw-mill, and grist-mill. On the 15th of *January,* 1827, the cause was removed by the plaintiffs into the Circuit Court. *David Butz* subsequently died before the declaration was filed.

The plaintiff's mills are situate on the *Bushkiln* creek, not far from its junction with the river *Delaware.* The nearest mill to the mouth of the creek is on its north bank, and belongs to Mr. *Mixell.* On the south bank, a few rods farther up, is the oil-mill of *Peter Ihrie,* the defendant; a few rods farther is the division dam, the subject of the present controversy. This division dam is a permanent fixture placed in the bed of the creek, and extending from bank to bank. It consists of a log laid upon a solid foundation, and a plank eight and a half inches wide erected on the log. Over this the whole volume of the stream must pass, whether the water be high or low. This dam is but a short distance below the line of the plaintiff's land. Farther up the creek, on its north bank, a few rods from the division dam, is the plaintiff's saw-mill. Above the saw-mill, is the mouth of the tail-race appurtenant to the grist-mill, which is situate still farther up the creek, on its north bank.

The plaintiff, on the trial, after having proved possession of the mills, gave evidence of the erection of the division dam, by the defendant in the year 1825, and that the effect of it was, to cause

(Butz *v.* Ihrie.)

the waters of the creek to flow back over the plaintiff's line, and into the tail-race of his grist-mill. The back water, it was proved, came much sooner into the tail-race of the plaintiff's grist mill since the laying of the plank which formed part of the division dam than it did before; and one witness testified that he had measured from two, three, four, to ten inches of backwater on the sheeting when there was a rise in the creek. The plaintiff's saw-mill was built from twenty-eight to thirty years before the trial of the cause, and the grist-mill before the Revolution. A great deal of evidence was given relative to the backing of the water, which it is not necessary now to state: one witness swore that he would not give as much for the grist-mill with the back water on, as if it were off.

The defendant gave in evidence a deed, dated *April* 2d, 1792, between the executors of *Peter Koechline* of the one part, and *Jacob Koechline* and *Peter Ihrie* of the other part, which embraced the premises of both the plaintiff and defendant; also a deed dated 12th of *April,* 1793, by *Jacob Koechline* and wife, and *Peter Ihrie* and wife, to *James Ralston* and *John Mulhallon,* for the premises now the property of the plaintiff. This deed contained an exception or reservation in these words, viz: " excepting and reserving therefrom to the said *Jacob Koechline* and *Peter Ihrie,* their heirs and assigns, tenants and occupiers, possessing and holding a certain lot or piece of ground situate on *Bushkiln* creek, aforesaid, below and adjoining the hereby granted premises, commonly known by the name of " the fulling mill tract," the full, free, and absolute right and privilege to raise, swell, and dam the water in the said creek from a dam intended to be built on the said fulling mill tract upon the premises hereby granted, provided the same is not raised or swelled so high as to injure the grist-mill hereby conveyed."

On the 9th of *December,* 1793, a deed of partition was executed between *Jacob Koechline* and wife, and *Peter Ihrie,* by which as well the tract described in the above exception, as " below and adjoining" the plaintiff's tract, as the water power belonging to it, was divided between the parties. The portion of water allotted to *Jacob Koechline,* was that afterwards used for the purposes of *Jacob Mixell's* mill, already mentioned; and the professed object of the division dam now complained of, was to divide the water between *Mixell's and Ihrie's mills.*

It appeared, from the evidence given by the defendant on the trial, that he had, thirty years before, purchased planks to be used in the erection of a mill: That the old works erected near the site of the defendant's present oil-mill, and which were used for the purpose of making oil and fulling cloth, went to decay, after the year 1776: That the dam then erected did not swell the water to the tail-race of the grist-mill, now the property of the plaintiff, which was erected twenty years before the Revolution, and

(Butz *v.* Ihrie.)

that nothing had been built on the site of the old fulling-mill until the defendant erected his present oil-mill. Much evidence was likewise given on the part of the defendant, as to the extent of the back water, and other matters, a detail of which is not now material.

At the close of the trial his Honour, the Chief Justice, delivered to the jury the following:—

CHARGE.—There is a preliminary objection to the form of the action. It is said, that these plaintiffs had separated their interests, and that they could not recover jointly. I think differently. At law, they were still tenants in common, and may therefore join in a common law action, for an injury to their possession, and divide the damages, if they obtain any, according to their equitable rights.

There is, certainly, evidence that the defendants have flooded the plaintiff's *land;* but the defendant says he has a right to do so, provided he does not injure the *mill;* and for this he refers to a reservation in a deed under the parties to which, both sides respectively claim. The plaintiffs say, the defendant has lost the benefit of the privilege, by not having exercised it from the 2d of *April*, 1793, till *August*, 1825, thirty-two years. There has been no use of the water adverse to this privilege, and the question, therefore, is not one in analogy to the statute of limitations. The inquiry is, whether the lapse of time is sufficient to presume a release? I think it is too short. It has been left to a jury to presume an ouster after thirty-eight years against a tenant in common, and this is the very shortest period ever known. I am unwilling to narrow it.

This is not like a case where a man backs the water to his own line; in which case he will not be answerable for the increased rise of the water in freshets. In that case the law gives him a right to do so, without conditions, or restrictions. But that is very different from a case where a privilege is granted on specific conditions and restrictions.

The inquiry then is, whether the defendant has flooded the land of the plaintiffs, so as to injure the *mill*, in any way at all, *as it then stood*, whether in high or low water? If the mill has received any injury, the plaintiffs are entitled to damages; if it has not been injured, they are entitled to none. The matter, therefore, comes to a question of fact. As you have not only heard the evidence, but viewed the premises, you are quite as competent to pass on it as I can be. The cause, therefore, is submitted to you, under this direction, for your consideration of the matter of fact exclusively.

The jury found a verdict for the defendant, and the plaintiffs' counsel moved for a new trial, for which they filed several reasons. The motion having been overruled, an appeal was entered to the court in bank. The points chiefly discussed in the argument, are sufficiently stated in the opinion of the court.

*Scott* and *Binney*, for the plaintiffs, cited, 2 *Saund.* 175, *note.*

(Butz *v.* Ihrie.)

1 *Vern.* 32. 196.   2 *Pothier,* 128.   2 *Brown's Rep.* 29.   *Strick-ler* v. *Todd,* 10 *Serg. & Rawle,* 69.   *Kingston* v. *Lesley,* 10 *Serg. & Rawle,* 383.   *Norris's Peake,* 499, *note.*   *Jackson* v. *Hudson,* 3 *Johns. Rep.* 387.   *Com. Dig. Fait. E.* 290.   *Cro. Jac.* 121. *Blaine's Lessee,* v. *Chambers,* 1 *Serg. & Rawle.* 169.   *Angell on Adv. Enjoym.* 24, 63, 68.   *Angell on Water Courses,* 45. 1 *Phil. Evid.* 124.   *Winchelsea Causes,* 4 *Burr.* 1962.   12 *Mass. Rep.* 157.

*J. M. Porter,* and *Tilghman, contra,* referred to *Angell on Adv. Enjoym.* 55, 64.   2 *Com. Rep.* 584.   1 *Com. Rep.* 382. 7 *Wheat.* 59.   1 *Pick. Rep.* 466.   14 *Mass. Rep.* 55.   9 *Serg. & Rawle,* 26.   13 *Mass. Rep.* 614.   4 *Dall.* 244.   1 *Journ. of Jurisp.* 256.   3 *Salk.* 278.

The opinion of the court was delivered by

Top, J.—It is the unanimous opinion of the court to affirm the judgment.   The question chiefly argued by the counsel has been, whether the case is affected by the act of limitations, or by analogy to it?

The plaintiff alleges an injury by a dam erected by the defendant in a stream, called the *Bushkiln,* throwing the water upon his, the plaintiff's land, and injuring his grist-mill.   The defendant insisted that when the suit was brought, no water at all had been raised upon the plaintiff's property by means of the dam; he admits that, after the suit was brought, the water had been thrown by the dam upon the plaintiff's land, but not so as to hurt the plaintiff's mill, and that the dam was lawfully erected by virtue of a reservation in a deed, dated 12th of *April,* 1793, from *Jacob Koechline* and *Peter Ihrie,* to *James Ralston* and *John Mulhallon,* in these words: "excepting and reserving therefrom, to the said *Jacob Koechline* and *Peter Ihrie,* their heirs or assigns, tenants and occupiers, possessing and holding a certain lot or piece of ground, situate on *Bushkiln* creek aforesaid, below and adjoining the hereby granted premises, commonly known by the name of "the fulling-mill tract;" the full, free, and absolute right and privilege to raise, swell, and dam the water in the said creek, from a dam intended to be built on the said fulling-mill tract, upon the premises hereby granted; provided the same is not raised or swelled so high as to injure and damage the grist-mill hereby conveyed."

The grist-mill mentioned in the reservation is the plaintiff's mill in question.   The reservation is admitted to be valid, unless affected by lapse of time.   But the deed being dated in 1793, and the dam complained of not being erected until 1825, and there thus being a space of thirty-two years between the reservation of the right, and the building of the dam in alleged pursuance of that right, the argument by the plaintiff's counsel is, that the privilege reserved having been abandoned or neglected for twenty-one years

(Butz *v.* Ihrie.)

and more, is thereby lost; and that a release, or some other extinguishment, ought to be presumed, from mere length of time, by the act of limitations, or the legal analogy to it. They argue, that here are eleven years over and above the time necessary either to create and confirm by possession an incorporeal right, or to forfeit and extinguish any privilege, such as that claimed by the defendant in this case, by non-user and laches.

We are all of opinion, that the lapse of time has not been such as to create any bar or forfeiture, and that under the circumstances of this case the privilege reserved in the deed of 1793, was in full force in 1825, unaffected by any prescription. The omission to erect the dam can scarcely in this case be called a non-user. Certainly it cannot be called laches. It would have been otherwise, had the deed shown that an immediate exercise of the privilege reserved was contemplated by the parties. Here the right of building the dam appears to be expressly reserved, even to the heirs and assigns of the grantors in the deed. We concur in the opinion of the Chief Justice expressed to the jury, that the law of limitations may be applicable to a case of this kind; but that the time cannot begin to run against such a privilege by reservation, until some default, negligence, or acquiescence is shown, or may be fairly presumed in the owner. The time of limitation may begin to run as soon as the laches exists, but not before—no more than on a bond or promise to save harmless, will the limitation begin to run, before the damage happens: it not being the date of the contract or grant that is material in these cases, but the time of performance.

The plaintiff's counsel have presented one very important question, which, I apprehend, cannot be directly decided, because it does not appear to have been presented to the court below, nor mentioned. It is, whether the dam in question, not being an ordinary mill-dam, but erected for the mere purpose of dividing the water between the mills on the different sides of the island, thus causing a perpetual swell of water on the plaintiff's land, can be authorized by the reservation in the deed of 1793? It seems to be a question which depends on sundry matters, such as the nature of the stream, usage, necessity. If, in point of fact, the dividing dam is necessary to the full, just, and proper enjoyment of the water power, then, in my opinion, the erection of such dam is justifiable under the reservation.

We all agree with the plaintiff's counsel most entirely, that, according to the just intent and meaning of the proviso in the reservation, an injury to the plaintiff's mill-race is an injury to his mill. There can be no doubt upon the matter. Any impediment in the stream caused by the defendant's dam, by which the plaintiff's mill is stopped from grinding in any state of the water, or made to grind slower, or worse than it otherwise would, is an injury for which the plaintiff would be entitled to damages in this case, notwithstanding

(Butz *v.* Ihrie.)

the reservation is yet in full force.   If the damage was to the land only, and not to the mill, the plaintiff was not entitled to recover. And, in substance, the Chief Justice so charged the jury.

The mere number of dams we do not think to be material: though the words of the deed are "a dam," &c., yet the substance of the reservation is of a privilege to overflow the land, not injuring the mill.   Whether this is done by one dam, or more than one, erected on the defendant's land, appears unessential.   This applies not to the dividing dam.   Whether that is illegal or not, seems to depend on other matters already mentioned.

Judgment affirmed.