[PHILADELPHIA, JANUARY 21, 1837.]

2 Wh 123
215    393

2wh 123
225   531

## YEAKLE *against* NACE.

IN ERROR.

*Twenty-one years occupation of land, adverse to a right of way, and inconsistent with it, bars the right.*

THIS was a writ of error to the Court of Common Pleas, of Montgomery County, to remove the record of an action upon the case brought by Christopher Yeakle against Jacob Nace, for disturbing a right of way.

On the trial which took place on the 8th of September, 1836, it appeared in evidence that the lands of *Yeakle* and *Nace* were originally comprised in one large tract of one hundred and thirty-eight acres, three roods and seven perches, and were owned by Thomas Coombe.

Thomas Coombe, by his last will, dated May 14th, 1780, directed his executors to sell this said tract of land within two years after his decease. Tyringham Palmer and Mary his wife, she being the only surviving executrix of the will, divided the tract into eleven lots, and sold the same at public sale. The whole of these lots, with the exception of the one marked No. 11, were sold, at different times, to Christopher Yeakle, the plaintiff. The first deed to him from Palmer and wife, was dated 15th of June, 1805, and conveyed to him lots Nos. 7 and 8. In this deed it was recited as follows:—" And the said Tyringham Palmer, and Mary his wife, in compliance with the will of the said testator, and for the more advantageous sale of the said large tract of land, having caused the same to be laid out and subdivided into smaller lots, marked in the draught thereof from No. 1 to No. 11, *and having also laid out a certain twenty feet wide road or lane running from the said " Willow Grove" road, along the line and side of the before described large tract, intended to communicate with another lane, leading to the Germantown turnpike road, on that line which divides the lands of Enoch Rex and William Rex from those of John Peters, for the accommodation of the purchasers of the said smaller lots; which last mentioned lane it is agreed is to be purchased and procured at the joint expense of the purchasers of the said smaller lots, save and except lot No. 11; each purchaser*

(Yeakle *v.* Nace.)

*being bound to contribute to the expense thereof proportionably, according to the contents or quantity of the lot or lots so purchased."* *" Together with the free use and privilege of the said twenty feet-wide road or lane,"* &c.

By deeds from Palmer and wife to Yeakle, dated April 1st, 1806, and January 2d, 1807, lots No. 9 and 10, and 5 and 6, were conveyed with similar recitals, to Christopher Yeakle, in fee.

The lot marked on the draught No 11, was conveyed by Palmer and wife to Aaron Keyser, by deed dated June 15th, 1805. This deed contained a recital with respect to the twenty feet wide lane, similar with that mentioned in Yeakle's deeds, except that it exempted the purchaser of lot No. 11 from the payment of any portion of the expenses of the lane.

Aaron Keyser, by his last will, devised this lot, No. 11, to his brother William and his heirs; and William Keyser and wife, by their indenture of assignment, dated 1st of August, 1826, conveyed the same premises to Jacob Nace, the defendant in fee.

The following draught will exhibit the situation of the property. It was admitted on the trial of the cause in the court below, as evidence of draught of the property of Tyringham Palmer, so far as the same was represented by *black* lines.

DIAGRAM.

(Yeakle v. Nace.)

The following parol evidence was then given.

Joseph Dunnett testified as following :—" This appears something like the draught of Yeakle and Nace's property ; I have a know-ledge of Christopher Yeakle owning lands adjoining Nace's ; wood-land and clear land. The woodland adjoining the land of Nace, about one hundred yards from Willow Grove road ; it was bounded besides by land of Mr. Peterman and Shettinger, and by William Keeper, and I don't know who else. The clear land was bounded by Ottenger's and the woodland. Last fall a year, Mr. Yeakle sold the wood leave of the land adjoining Nace's ; I purchased some ; I did not haul myself ; it was hauled out by way of the upper road, called the township line road, formerly called the Germantown road ; the road I allude to is the county line between this county and Philadelphia ; this has been opened longer than my recollection ; I did not try to get out along on Nace's line to the Willow Grove road ; it was not opened ; it would have been more convenient to get out by Nace's, if it had been opened ; much nigher and handier ; it was not opened for us ; it was fastened up by a fence. I was never present when Nace attempted to stop Yeakle from going over the land ; I saw Nace hauling stone there one day ; I saw the stones lying there at the bars, where Mr. Yeakle had opened the lane, and cut it down a little to make it easier to go out to the Willow Grove road. This was at the Willow road, to make it commodious to travel out to those who had purchased the wood ; he cut it as wide as the bars, perhaps a little wider. The fence between Yeakle and Nace runs across the lane, marked on the draught up to Peterman's fence and line ; there were several loads of stone ; we could not have got out ; he wedged the bars ; I saw him, Jacob Nace, haul-ing the stone ; I saw that the bars were wedged ; I did not attempt to get out that way ; I think this was last October a year ; shortly after the lots were sold. Nace's land joins on the Willow Grove road ; Peterman's and Nace's land joins."

Being cross-examined :—" I never owned or purchased any of the land mentioned in Mr. Yeakle's deeds ; never occupied them more than by occupying them to cut the wood. Mr. Yeakle lives some distance off this tract ; about three quarters of a mile ; he has lived off where he now does twelve or fifteen years ; I never saw any lane opened along the line through Mr. Nace's land ; it has been enclosed as it now is, ever since I have known the property ; there is no building on this property of Mr. Yeakle's ; Yeakle's land has also been enclosed as it now is, so long as I have known it ; the fences all extend across the lane to this fence ; the lower fences of Yeakle also go across this lane."

Being re-examined :—" There are no partition fences from the line between Nace and Yeakle out to the end of Yeakle's property ;

(Yeakle *v.* Nace.)

there is one now I recollect crossing the lane; there are bars there for the use of Mr. Yeakle and others who bought wood lots there; Yeakle gave them the privilege."

Isaac Yeakle testified as follows:—"I am acquainted with the property of which that is a draught; have been there forty years; I never saw the draught before; the lot marked No. 11, adjoining the Willow Grove road, is Nace's, which A. Keyser purchased of Coombe's heirs; Coombe's property ran back a mile; the next one, No. 10, is Yeakle's; Yeakle owns from No. 5 up to Nace's, and all the way out to the county line; there are twenty or twenty-five acres of Woodland; there are no buildings on the lots .Yeakle bought of Coombe's executors; Yeakle always farmed the lots himself which he bought of Coombe's heirs; he was bred and born where he now lives; he lives about half a mile from the nearest lot; he is an old man; that called a lane never was a lane; it was never opened; I speak of what I know; Christopher Yeakle, about two years ago, sold a parcel of the wood off as wood leave, not the land; the purchasers wanted the road opened to go out to the Willow Grove road, and Christopher Yeakle went and opened the road to come out to the Willow Grove road; he went and took men and made bars at the Willow Grove road, at Nace's corner, to get out, and likewise fixed the road, so they could cart out the wood; Jacob Nace forbid it, and shut it up again; Nace put the bars away, and put up the fence again; he wedged the bars, and fastened them; Yeakle fetched them there; there were no bars before—none were wanted; it was left just as it was purchased; Nace hauled stone in the road; he put three or four perches there; after that, they could not get out without hauling them away; Yeakle had men and carts there; they dug down the bank at the corner, and fixed the road so that they could come out."

Being cross-examined:—"The land above lot No. 6, is Christopher Yeakle's; he does not live there; he lives at Chesnut Hill; he owns Nos. 5, 6, 7, 8, 9 and 10; there never was any lane or road opened along the line through Nace's land; I never saw Mr. Yeakle or any body else want to go out with carts before; he went there to mend the way at the time I spoke of; I don't know about any other time; I heard Mr. Nace forbid Mr. Yeakle to open the road; he forbid him to do it; I was by and heard Nace speak to Yeakle; Nace said, 'I forbid you to open that road.' "

John Knible testified:—"I helped Christopher Yeakle to open the road or lane near the Willow Grove road, directly after he had sold the wood leave; he took a horse and a cart, and rails and posts, and went across Nace's lot; he took four rails out as neatly as we could, planted posts and put in the rails, and cut down the bank and then left it; in the course of a few days after, I saw it; then the

(Yeakle v. Nace.)

two posts were cut off at the bottom, the rails were thrown over on Yeakle's side, and his own put up as it was before we took it down; he examined it and found his rails were nailed fast in the post; he went there again with a few hands more, and we hauled several cart loads of stone off Yeakle's lots to the road, where it was not passable; we took the rails out again, and made them so we could take them in and out, and took out the nails, and cut down the bank a little more; a few days afterwards we went there to look if the road had been left as we left it; we found that the stone we had hauled had been moved from there, and piled against the fence inside of Nace's lot, at the Willow Grove road, and that his rails had been spiked fast; on the west side of the twenty feet lane the land is owned by Peterman, Shedinger, Widow Cowper, William Cowper, Daniel Streeper, John Nace, John Kittinger, and then comes Christopher Yeakle; Yeakle's land runs up as far as No 8."

Being cross-examined:—"None of us went to see Mr. Nace before we took down the fence; there were no bars there before; Nace had bars at another place more convenient for him; the line along the lane by Peterman and the others appears to be straight; Nace's land has been enclosed as it was before we went, and as it now is, about twenty-two years, as long as I can recollect before we went there."

Being re-examined:—"Jacob Nace was present at the sale of the wood lots; he was present when the conditions of sale were read; he stated then that he would not allow any one to pass through his lot; he forbid any person to pass through his lot."

The following parol testimony was produced on the part of the defendant below.

Henry Hallman testified as follows:—"I know the property both of Yeakle and Nace; I have been acquainted with it thirty or forty years; there never was any cart way along the line though Nace's lane; Nace's land has been enclosed as it now is, twenty-five years, to my knowledge; I don't know how much longer; the fences have been in the same condition ever since I have known the property, and there never were any bars at the corner at the Willow Grove road; the fence on the line between lots 10 and 11, between Yeakle and Nace, has been there thirty years or more, as long as I can remember; the fences come up to Peterman's line fence; the fence around Nace's land at the time of opening the fence, were as they were thirty years before; I never heard of any dispute about them, in all that time; there were no bars or gate there; I never knew of any passing or repassing through Nace's property."

Jacob Peterman testified:—"I have known the property ever since I was born; there never was any lane opened there; I own the

land adjoining Nace's; I never knew of any road or cart way by, or along through Nace's land; his land was always enclosed as it was in October, 1834, for forty years; the fence on the line between Yeakle and Nace, joins to my fence; I don't recollect that any road was used along the line."

William Keyser testified:—"Aaron Keyser owned lot No. 11, about thirty-five years ago, and till his death; he devised it to me; I sold it to Mr. Nace; I have known the property ever since I can remember; I can remember back fifty years; no road, lane or way was opened or used for fifty years; don't know for the last four years; no road was ever used by the owner of Yeakle or Nace's lands, over the lands of the others."

Being cross-examined :—"I was at one time, the owner of the lot now belonging to Nace; I came into the possession of it, five or six years ago; I never heard of this lane, till I had a summons to attend here; I consider I could have had a right to prevent Yeakle from passing, through the lot; I owned it only a couple of months; my brother owned it thirty years; I lived by it; my father's place adjoined that lot; I' saw my brother's deed, but never read it; I took no notice what was in it."

Joseph Peterman testified:—"I have known Nace's lot as long as I can remember; there was never any lane opened from Yeakle's land out to the Willow Grove road; Nace's land was always enclosed as it was in September, 1834, and now is; the fences were always as they now are; there is a line fence between Yeakle and Nace; it joins Peterman's fence, and crosses this twenty feet wide strip; there are no bars or any opening in this fence; there is another fence through Yeakle's land, that also crosses this strip; there are no bars or opening in this fence over this lane or strip."

Anthony Hallman testified:—"I have known Nace's land before Yeakle attempted to take down his fence; upwards of twenty-two years; and during all that time the fences were up just as they are now; there was never any lane or road opened along Nace's lot; there is a line fence between Yeakle and Nace; this comes up to Peterman's fence; Christopher Yeakle's part of this fence is next to Peterman's land; Nace's makes the other part towards Ottinger's; no bars or gate were left by Yeakle; I have often seen Yeakle repairing his part of the fence; there are other fences below which cross this strip, but there are no gates or bars in them."

The Court, (Fox, President,) charged the jury as follows:—

"The question for decision is, whether Christopher Yeakle had at the time of the act complained of, a right to pass and repass from his own land, along and over the land of Nace, to the Willow

Grove road.  He contends that he has shown such a right, by the evidence given in the cause, and the defendant denies that the evidence establishes such claim.

It appears, that although in the several deeds of Palmer and wife, the twenty feet wide road is mentioned as having been laid out, yet the agreement had never been carried into execution, and the grantees never took possession, or in any manner, used it as a way. There has been no fence enclosing it, nor any other act done showing that it was set apart from the rest of the land, to be used as a way.  It was necessary for the plaintiff to show by some evidence, that he, or those under whom he claims, after the execution of the agreement referred to, either used the ground as a road, or claimed the right so to use it.  We do not agree with the plaintiff's counsel, that it would have made no difference in this case, had they proved that there was a fence, indicating the road or lane. We should have considered that a very different case from the present.  The evidence that no road was ever opened or laid out, is certainly very strong.  Keyser, who is an old man, and who probably would have known, had the road ever been opened or used, says he has known the land for fifty years; that he never heard of any road being there, and that none was ever used.  Neither in Keyser's will, nor in Nace's deed in 1826, is there any mention of a right of way.  The defendant, and those under whom he claims, have had peaceable possession of the land over which the claim for a road is now set up, for twenty-nine years before the action brought; and under the evidence in the cause, such possession is a bar to the plaintiff's claim.  There is no dispute about the facts; and it is law, that a right of way or other easement will be lost by a *non-user* for twenty-one years.  If you believe, therefore, that the defendant, and those under whom he claims, had the peaceable and exclusive possession of the land over which the right of way is claimed in this case for twenty-one years, the plaintiff is not entitled to recover, and the verdict must be for the defendant."

The plaintiff's counsel excepted to this charge; and having removed the record to this Court, assigned for error—

" That the Judge erred, in stating that a right of way would be lost by *non-user*, for twenty-one years."

Mr. *Mulvany* and Mr. *Hazlehurst*, for the plaintiff in error, cited *Hoy* v. *Sterett*, (2 *Watts*, 331.)    *White* v. *Crawford*, (10 *Mass. Rep.* 183; 3 *Dane's Abr.* 275.)    *St. Mary's Church* v. *Miles*, (1 *Wharton's Rep.* 229.)    *Butz* v. *Ihrie*, (1 *Rawle*, 218.)    *Nitzell* v. *Paschall*, (3 *Rawle*, 82.)    *Grubb* v. *Gilbert*, (4 *Watts*, 233.)    Act of 26th March, 1783.

(Yeakle *v.* Nace.)

Mr. *Sterigere,* for the defendant in error, cited *White* v. *Craw-ford,* (10 *Mass. Rep.* 183.)    *Hatch* v. *Dwight,* (17 *Mass. Rep.* 289.) *Angel on Adverse Enjoyments,* 22, 76, 109.    *Kingston* v. *Lesley,* (10 *Serg. & Rawle,* 383.)    *Espinasse on Evidence,* 274.    1 *Penn. Blackstone,* 294.    *2d Penn. Blackstone,* 25.    4 *Jacob's Law Dict.* 411. 3 *Starkie,* 1677. 1 *Campbell,* 463.    *Jones* v. *Porter,* (3 *Penn. Rep.* 132.)

The opinion of the Court was delivered by

Huston, J.—It has to me sometimes appeared strange, that statutes of limitation should have met with such difference of construction, not only in different countries or states, but in the same country and court at different periods; and this difference has been so remarkable, that lawyers and judges too have at times spoken of them as entitled to no favour, and again as most beneficial laws; and again other lawyers and judges have said, they were to be understood and applied according to their intent and meaning, without regard to their supposed policy or impolicy.    This latter has been the course of the Supreme Court of the United States, and generally of this court, though for a time it felt trammelled by some English decisions.    The difference of opinion has arisen from taking such acts to have been founded on different reasons.    Perhaps no one of the reasons for their enactment was the sole one.    They can be supported by many reasons.    They seem to me however to have their binding force from the power of the legislature: to be imperative in all cases within their letter, and inoperative, with a very few exceptions, on all cases not within their letter.    One of these exceptions is, that where the adverse possession would bar a right of the plaintiff, if he once had such right, to the land itself, it could also bar a right to an easement or an appurtenance united to land—this, provided there has been a possession and use adverse to and inconsistent with such right, or appurtenance, for twenty-one years, a right of way or of water; and the like may remain dormant for a long time, and not be lost, if from the nature of the right and the contract it is apparent that it was not contemplated that the owner of such right should exercise it at an early period, and if the other party has done nothing inconsistent with the existence of such right, as in *Butz* v. *Ihrie,* (1 *Rawle,* 218.)

Where a right has been granted, or reserved, on a conveyance of land, and nothing to show that it was expected or intended that the right should be exercised immediately, but on the contrary, that it was to be at the pleasure of the party owning such right, to exercise it at such future time as might suit his interest or convenience,; it will not generally be lost by non user for twenty-one years.    *Nitzel* v. *Paschall,* (3 *Rawle,* 82.)    But if the other party does acts inconsistent with and in denial of such right, it will be otherwise; as if a

(Yeakle *v.* Nace.)

man grants twenty-five feet of front on one of the streets of this city, retaining the title to the adjoining land, and at the same time grants a right to an alley four feet wide, between the lot sold and that retained, expressly reserving the right to build under and over the said alley. Now the grantor is not bound to build at all, and though he does not for more than twenty-one years, his right to build under and over the alley is not gone ; but if his vendee of the twenty-five feet should cover those four feet by his building, the whole right of the vendor to those four feet would be gone by the limitation of twenty-one years, unless suit was brought within that time. In the case before us, when the tract of Coombe was divided into eleven lots by his executor, it was apparent that except lot No. 1 at one end, and No. 11 at the other end, no road touched these intermediate lots ; and a lane was proposed in the terms of sale and in the deeds, to be formed by cutting 20 feet from the end of each lot ; and if different persons had purchased, such a lane would have been immediately necessary ; but it happened that he under whom Nace claimed, purchased No. 11, with a road along side of it, and Yeakle the plaintiff purchased the other 10 lots, the house being on No. 1, and a road past it : a lane through the intermediate lots became unnecessary to the two purchasers. If nothing more had occurred, I do not say twenty-one years would have put an end to either party's right to a lane ; but he under whom Nace (the defendant) claims, immediately enclosed his lot, and has had two fences across, where this lane would have been for 30 years ; and during all that time has been cultivating the land over which the lane must have passed. This was either a direct denial of the plaintiff's right to a lane, or a possession adverse to his claim of one : twenty-one years adverse possession would have barred his right to the land itself, though he had a deed for it ; and twenty-one years' occupation adverse to the easement, and inconsistent with it, bars the right to a way.

Judgment affirmed.