### Smyles *v.* Hastings *et al.*

The tenants in common of a tract of some four hundred acres, had it sub-divided into nine lots, and a map made designating a road extending east and west through the centre of the tract. They released to the grantor of the plaintiff one of the lots, by a conveyance which referred to the map and to the contemplated road, as a boundary of the lot: *Held*, that a right of way over the road passed as a part of the grant, as an easement appurtenant to the lot.

Such lot being inaccessible without passing over the lands of the grantors or of strangers, a right of way, irrespective of the express terms of the grant, passed as a way of necessity; and the map is to be regarded as the indication by the grantors of the particular land over which such way should pass.

Such right is not lost or extinguished by mere non-user, but only by a holding strictly adverse for the period of twenty years.

The grantees of another portion of the tract, fronting on said road, under a deed which reserved the right of way over so much of the road as was within the premises in which the easement was reserved, actually inclosed or occupied the road for more than twenty years, during which time, the land of the plaintiff being wild and unoccupied, he had no occasion to assert the right of way: *Held*, that whether the deed to the defendants did or did not include the land over which the road passed, the possession thereof was not adverse to the plaintiff's right of way.

APPEAL from a judgment of the Supreme Court. The facts agreed upon and admitted were substantially as follows: John Atkinson, junior, prior to 1828, died seised in fee of lots Nos. 25 and 33, of the second division of lots in township No. 13, in the seventh range of townships now in the town of Ironde-quoit, in the county of Monroe. By his death, the lots de-scended to William Atkinson, Eliza S. Atkinson and others, his children and heirs-at-law, as tenants in common. In Oc-

tober, 1828, the said children and heirs-at-law caused the two lots Nos. 25 and 33 to be subdivided into nine smaller lots, numbered from 1 to 9 inclusive, by Valentine Gill, and a map of such subdivision to be made by Gill. This map shows distinctly the size, shape and location of each of the nine small lots made by the subdivision, as well as the two original large lots Nos. 33 and 25. The map represents the whole tract, consisting of the two original lots, as surrounded on the east, west and north sides by a road or roads, and with an east and west road running through the centre of the tract from the road on the west to that on the east side of the tract, and nearly equidistant from the north and south lines thereof. Of the smaller lots, No. 9 laid in the southeast corner of the tract, extending north to the east and west road through the centre of the tract, as represented on the map; No. 8 contained 57 acres and adjoined No. 9 on the west, and also extended north to the east and west road; No. 3 contained 52 acres, and extended from the road on the west side of the tract to No. 8, which bounded it on the east; lot No. 4 was of the same size and shape as No. 3, and lay directly north of it; the said east and west road, as laid down on the map, running between them; lots Nos. 1 and 2 laid west of No. 8, and extended on the north to No. 3, and was bounded on the east by a part of No. 8.

After this subdivision and prior to 1st December, 1828, the said children and heirs-at-law made partition of lots Nos. 25 and 33, and on such partition conveyed and released to William Atkinson lot No. 8 of the subdivision; and on the 8th December, William Atkinson conveyed the same to Janna Holton, by the following description: " All that piece or parcel of great lot No. 25, being subdivision No. 8 in said lot, beginning at the southwest corner of said lot, running on the west line of said lot north 24 degrees east, 29 chains and 50 links, to the centre of a contemplated road through said 25, to run east and west; thence east 19 chains; thence south 24 degrees west, 29 chains and 50 links, to the south line thereof; thence west 19 chains to the place of beginning, containing

51 acres, more or less; reference being made to a map, by Valentine Gill, of said great lots 33 and 25."

The plaintiff derived title by sundry mesne conveyances from Janna Holton to the east 30 acres of lot No. 8. At the time of the purchase by the plaintiff, which was in 1849, and previously thereto, lot No. 8 was unoccupied, and was wild and uncultivated.

The children and heirs-at-law of John Atkinson, on the said partition, conveyed to Eliza S. Atkinson, in severalty, lot No. 3 of said subdivision. On the 10th March, 1830, Eliza S. Atkinson conveyed lot No. 3 to Nicholas Toody and James Welch, by a deed in which the lot is particularly described as being known as subdivision No. 3, and in which the north line is described as running on the division line between subdivisions 3 and 4; and reserving the right of a road two rods in width on the division line between subdivisions 3 and 4. The defendants derived title to the said lot No. 3 by sundry mesne conveyances from Toody and Welch. In all the conveyances, including that to the defendants, the same reservation in respect to the road is made.

On the 22d November, 1830, Eliza Atkinson conveyed to James Waring lot No. 4, as being known and distinguished on a map made by V. Gill, as subdivision No. 4 in said lot No. 33, and then describing it by courses and distances. Soon after the deed of lot No. 3 to Toody and Welch, they entered into possession, and inclosed and occupied the strip of land laid down on the map as a road, between lots 3 and 4. The possession and occupancy of the land they conveyed had been continued to the time of the commencement of the suit. In 1851, the plaintiff took possession of the 30 acres owned by him, and required the defendant to open, or suffer to be opened, the road as laid down on the map, or a road two rods wide, from the highway running upon the west side of said lots 25 and 33 to the said lot No. 8, owned by the plaintiff, and the defendants refused such request, whereupon this action was brought. The road, as laid out upon the map, was intended to be four rods wide, and no part of it has ever been opened.

The plaintiff, in his complaint, prayed judgment for damages for obstructing and depriving him of the use and benefit of the way running eastwardly and westwardly across lots 33 and 25, and that the defendants might be also required to abate the nuisance and open the said way across lot No. 33, or remove all obstructions therefrom, so that the plaintiff might have free ingress and regress to and from lot No. 8, by means of said way.

After the facts above stated had appeared on the trial, the plaintiff's counsel offered evidence to prove that the plaintiff had sustained damage by reason of the obstruction of the way in question, by the defendants. The defendants' counsel objected to the giving of any evidence on that point, and the judge sustained the objection, and decided that the plaintiff was only entitled to nominal damages, to which decision the plaintiff excepted.

The judge then directed a verdict to be taken for the plaintiff, with six cents' damages, subject to the opinion of the court at general term, upon a case to be made by the plaintiff. The general term decided that the plaintiff was entitled to judgment on the verdict for nominal damages, with costs. Judgment being entered accordingly, the defendants appealed to this court.

*James Noxon,* for the appellants.

*Henry R. Selden,* for the respondent.

WRIGHT, J. The heirs of John Atkinson, senior, were the owners, in 1828, as tenants in common, of adjoining parcels of land in the county of Monroe, known as lots Nos. 25 and 33. In that year they subdivided the whole tract comprising the two lots, into nine smaller lots, according to a survey and map made for them by one Valentine Gill, and partitioned the tract among themselves, executing mutual conveyances and releases. There was a road or roads on the east, west and north sides of the tract, but none on the south side; and in the map of the subdivision and partition, a road running through the centre of the tract from the road on the west to that on the

east side thereof, and nearly equi-distant from the north and south lines, was designated. As the tract was subdivided, lot No. 8 of the subdivision adjoined this designated road, but could not otherwise be reached except by crossing other lots of the subdivision. Having thus subdivided the tract, the heirs of John Atkinson (of whom Eliza S. Atkinson was one) conveyed and released to William Atkinson subdivision lot No. 8, as it was described and marked on the map made by Gill. It does not appear from the case that any other portion or lot of the tract was conveyed or released to William Atkinson. In the partition subdivision lot No. 3, which adjoined the road designated through the centre of the tract, on the north, and lot No. 8 on the west, was conveyed in severalty to Eliza S. Atkinson, who, in March, 1830, conveyed it to Toody and Welch. Her deed describes the north line of the lot as running on the subdivision line between lots Nos. 3 and 4, and as to courses and distances and quantity of land, follows in all respects the survey and map made by Gill. The distances of the east and west parallel lines, from the south to the contemplated road on the north line, according to the survey and map made for the heirs by Gill, and adopted by them, were each fourteen chains and sixty links, and the same distances are given in the deed to Toody and Welch. The deed also reserved the right of a road, two rods in width, on the division line between subdivisions No. 3 and No. 4, which latter lot lay directly north of No. 3. Afterwards, and in November, 1830, Eliza S. Atkinson conveyed No. 4 to James Waring, describing it as "a piece of land known and distinguished on a map, made by V. Gill, as subdivision No. 4," and as to courses, distances and quantity of land following Gill's map and survey. Lot No. 8 was wild and uncultivated at the time of the mutual partition and its conveyance to William Atkinson, and remained so up to the purchase by the plaintiff, from Atkinson's grantees, in 1849. Toody and Welch entered into the possession of lot No. 3 soon after the deed to them, and inclosed and occupied that part of the strip of land between lots Nos. 3 and 4, laid down on the map as a road through the centre of the tract. The defendants

acquired the title to lot No. 3 from the grantees of Eliza S. Atkinson, and when requested by the plaintiff, in 1851, to open or suffer to be opened the road as laid down on the map of the partition, or a road two rods wide, from the highway, running on the west side of the originally partitioned tract of land to lot No. 8, they refused. The question is, whether the plaintiff is entitled to a right of way from the east thirty acres of lot No. 8, purchased by him, over the road laid down on the map and survey adopted by the heirs of John Atkinson, senior, on partitioning the tract among themselves. If this right of way— either by express grant, or from necessity, as appurtenant or incident to the grant—passed to William Atkinson, it was acquired by Atkinson's grantees, including the plaintiff, and now exists unless lost or extinguished by non-user.

I am of the opinion that William Atkinson, by the conveyance to him of lot No. 8 of the subdivision, on the partition between the proprietors of the tract became entitled, as a part of his grant, to a right of way over the road laid down on the map, as an easement appurtenant to his lot; and this without regard to the question of necessity. By the subdivision and allotment of the tract by the proprietors, a right of way over this road was annexed as an easement to the lots bounded upon it, and the easement passed to Atkinson by the conveyance to him of lot No. 8. The proprietors marked out this road running through the tract from east to west, bounded lots upon it, and then executed conveyances of such lots. In fact, and in effect, the map on which the road was laid out, was part and parcel of such conveyances, and without resort to it the lands described in them could not be located. But, if this were otherwise, and Atkinson did not take, by the express terms of his grant, as an appurtenant, a right of way from lot No. 8, over the road marked out and designated by the proprietors of the tract, a right of way over the land of his grantors, to and from lot No. 8, passed as a way of necessity, incidental to such grant. Lot No. 8 was not accessible without passing over the lands of his grantors, or of strangers on the south. He became entitled therefore to a right of way to it over the

lands of his grantors as a way of necessity; and the map should be regarded as an indication by such grantors of the particular land over which the way should pass. Eliza S. Atkinson, one of the proprietors, and the grantor of lot No. 3, under whom the defendants claim title, recognized and reserved this right in the particular place claimed; and the defendants knew of, and took their title subject to this reserved right of way. It is not claimed by the counsel for the defendants, that a right of way did not pass to Atkinson as incident to the grant of lot No. 8, over the route designated on the map of his grantors, provided his land was inaccessible without passing over the land of his grantors or that of strangers. But it is urged that no way of necessity existed in his favor, because by the partition he became seised of subdivision lot No. 2, adjoining No. 8, on the west, and had a way through No. 2, to the highway, on the west side of the tract, and he had a way, also, on the south side of lot No. 8. If this were so, and at the time lot No. 8 was conveyed to William Atkinson, he could reach it by passing over his own lands, and avoiding those of his grantors or strangers, no way, of necessity, passed as incidental to the grant of such lot. There can be no implication of a grant of a right of way of necessity where the grantee has the means of obtaining access to the lands granted without trespassing on the adjoining lands of his grantor, or the property of a stranger. If they can be approached from a public highway or by passing through adjoining lands of the grantee, no right of way of necessity will be implied. The difficulty, however, on this point, is one of fact. The case does not show that there was any highway on the south side of lot No. 8, but the contrary; nor is there anything to show that lot No. 2 fell to William Atkinson in the partition, or that he ever owned it; or that either of the subsequent grantees of Atkinson ever had title to it. There is no evidence or admission in the case, tending properly to show to whom lot No. 2 fell in the partition, or who were its subsequent owners.

Either, then, expressly or by implication, the conveyance to William Atkinson of lot No. 8, passed to him a right of way

from such lot over the road designated by his grantors, running east and west through the centre of the tract, and which was obstructed as early as 1839 by the defendants' grantors, and the obstruction continued to the commencement of this action. The way thus granted passed by Atkinson's deed to Janna Holton, and was acquired by the plaintiff by the conveyance to him. The plaintiff has title to the east 30 acres of lot No. 8, the west part continuing still in Holton. If there was anything in the case to show that Holton, at the time of conveying the east 30 acres, was the owner of lot No. 2, his grantees could not enforce a way of necessity over the route through the centre of the tract, for such way might be enforced through the adjoining lands of their immediate grantor. But the case shows no such state of facts; and the plaintiff's lands are bounded on the north by the road laid down on the map. He has, therefore, by grant, a right of way over such road, and a part of his lands touching it, is entitled to its use.

Another question remains, whether the right of way thus acquired has been lost or extinguished by non-user? A right acquired by prescription may be lost by non-user; but it cannot be lost or extinguished by mere non-user when it has been acquired by deed. Nothing short of a holding strictly adverse for twenty years could produce the latter result. There was no adverse possession shown in this case. The plaintiff, or his grantors, had no occasion to assert a right of way to lot No. 8 prior to 1849, as before that it was wild and unoccupied. It is extremely doubtful whether the deed to Toody and Welch, of lot No. 3, in 1830, embraced the strip of land laid down on the map as a road between subdivision lots 3 and 4. If it did not, they entered upon, inclosed and occupied (the grantees of No. 3 succeeding them), under no claim of title founded on a written instrument; and the plaintiff or his grantees not having occasion to assert or use the right until assuming actual possession of No. 8, the former, under the circumstances, cannot be deemed to have held adversely to the latter. But if the deeds under which the defendants claim title are to be regarded as covering the strip of land designed for the road on

the north line of No. 3, then the reservation in the deeds·rebuts any presumption of adverse possession. The deed of the original grantor of No. 3, and all the conveyances, including that of the defendants, reserved the right of a road two rods in width, on the north line of No. 3. The grantees of No. 3 having taken the grant subject to this reservation, though they may have occupied and inclosed the land reserved for the easement, they are not to be presumed to have done so under a claim of title hostile to the right of the plaintiff, or those under whom he claims.

Upon the whole, I think, upon the facts of the case, that the plaintiff was entitled to a way from lot No. 8 over the route designated on the map of the partition amongst the proprietors of the tract, and the defendants having refused to open the road or allow it to be opened on the north line of lot No. 3, was liable to him in damages. The judge at the circuit directed a verdict for nominal damages, subject to the opinion of the court at general term. The Supreme Court gave judgment for the plaintiff, thereby establishing his right. That judgment should be affirmed.

All the judges concurring,

Judgment· affirmed.