HOWARD *v.* BRITTON & a.

A grant of "a certain spring of water with the land under the same," and of the right of entering upon the land of the grantor for constructing an aqueduct from the spring to land of the grantee, gives the grantee a fee in the spring and an easement in the soil for constructing and maintaining the aqueduct.

No length of time of mere non-user will operate to impair or defeat an easement acquired by deed.

The use of land by its owner will not destroy an easement therein which was created by deed, unless such use is adverse to the enjoyment of the easement and is continued for the length of time necessary for the creation of a prescriptive right.

TRESPASS, *qu. cl.* Facts found by a referee. September 27, 1859, Joshua N. Newton conveyed to Jonah F. Bent a spring of water in Winchester, with the right of constructing and maintaining an aqueduct in his land to the land and dwelling-house of Bent, a distance of about sixty rods. Bent constructed the aqueduct, and obtained thereby a supply of water for household purposes until the destruction of his house by fire in 1865. The water was shut off soon after the fire, and no use has since been made of the aqueduct. Bent mortgaged the lot on which his dwelling stood to one Dickinson in 1874. The mortgage was foreclosed in September, 1879. In October, 1879, Dickinson conveyed the Bent place to the plaintiff. No mention was made of the spring in the mortgage or deed.

Bent's administrator, by deed dated April 3, 1889, quitclaimed to the defendants all the right and interest Bent had to the spring at the time of his decease. Later, in 1889, the alleged trespass to the spring was committed.

*Don H. Woodward,* for the plaintiff. The spring passed to Dickinson, and from Dickinson to the plaintiff, as appurtenant to the premises conveyed, without being specially mentioned. *Hollenbeck* v. *McDonald,* 112 Mass. 247, 250; *Oliver* v. *Dickinson,* 100 Mass. 114; *Pettingill* v. *Porter,* 8 Allen 1; *Kent* v. *Waite,* 10 Pick. 138; *Barker* v. *Clark,* 4 N. H. 380. There was no abandonment of the spring by non-user. There was no act to indicate an abandonment. The several conveyances, the last one in 1879, conveyed the spring. The pipes and spring were not disturbed until 1889, when the plaintiff at once forbade the trespass.

*Batchelder & Faulkner,* for the defendants. No use was made of the spring after 1865; consequently, no use of it was being made at the date of the mortgage from Bent to Dickinson, nor had any been made for nine years prior to that time. The water was shut off at the spring soon after the fire, and for twenty-four years and until 1889 no water ran in the pipe, and no attempt was made to use it. The fact that the dwelling-house has not been rebuilt shows that the water from the spring, sixty rods distant, was not essential to the use and enjoyment of the property conveyed by the mortgage.

The spring not being mentioned in the mortgage or deed, and the water not being in use, nor its use necessary to the full enjoyment of the premises at the time of the grants, the right to use the water would not pass as appurtenant to the premises. See

remarks of *Bell*, J., in *Dunklee* v. *Railroad*, 24 N. H. 489, 495;—
to the same effect is *Winnipiseogee, etc., Company* v. *Perley*, 46
N. H. 83, 102;—see, also, *Philbrick* v. *Ewing*, 97 Mass. 133–
135; *Decorah Woolen Mill* v. *Greer*, 49 Iowa 490; *Manning* v.
*Smith*, 6 Conn. 289; *Adams* v. *Conover*, 22 Hun 424.

When Dickinson took his mortgage, and when he conveyed to
the plaintiff, there was no occasion to use the water on the prem-
ises because they had been devoted to another use; and the fact
whether there was or was not a right to so use the water formed
no part of the consideration in either transaction, and was no in-
ducement to either of the parties to enter therein.    Dickinson
never attempted to avail himself of the right, and did not attempt
to sell it to the plaintiff; the plaintiff did not bargain for the right,
nor did he buy the land for any purpose for which the water would
be necessary or useful, as is shown by his continuing for ten years
to use it for agricultural purposes, as it had been used for the pre-
ceding fourteen years.    He cannot after the lapse of twenty years,
by changing his purpose, revive an abandoned right, or make that
appurtenant which for that time has not been connected with the
property or considered as appurtenant.    *Gayetty* v. *Bethune*, 14
Mass. 49, 56.

Whether the water was shut out of the pipe by Bent or by the
then owner of the defendants' premises does not appear.    If by
Bent, it was an act showing an intention to abandon; if by the
latter, it was an adverse act which has been acquiesced in for over
twenty years, and constitutes an abandonment.    Non-user for a
less period than twenty years, accompanied by acts showing an
intention to abandon a right, is sufficient to constitute abandon-
ment.    Upon this branch of the case we claim an abandonment,
both on the ground of twenty years' non-user, and on the ground
that the plugging of the pipe, and the different use to which, dur-
ing all that time, Bent, Dickinson, and the plaintiff put the prem-
ises, are acts indicating an intention to abandon any right which
may have formerly existed.

SMITH, J.   Newton, in 1859, conveyed by deed to Bent and his
heirs and assigns "a certain spring of water with the land under
the same," and the right of entering upon the land of the grantor
for the purpose of constructing and maintaining an aqueduct for
conducting water from the spring to Bent's dwelling-house.    The
legal construction of the deed is, that Bent thus acquired a title
in fee to the spring, and an easement in the soil for constructing
the aqueduct and keeping it in repair.    It is possible that this is
not what the parties intended, and that, upon a bill in equity for
the reformation of the deed, it may appear that they intended
and understood an easement instead of a fee in the spring.

In 1889, Sabin, administrator of the estate of Bent, quitclaimed
to the defendants all the right and interest Bent had in the spring

at the time of his decease.    Whether Bent's estate was settled in the solvent or insolvent course, and whether the administrator sold with or without license, may be material facts with regard to which there is no finding by the referee.

In the mortgage from Bent to Dickinson, and in the deed from Dickinson to the plaintiff, no mention was made of the spring or of the aqueduct easement, nor was any mention made of " appurtenances" in the granting part of either.    If an aqueduct easement became appurtenant to the premises mortgaged and afterwards conveyed, it passed with the grant of the plaintiff's land. *Spaulding* v. *Abbot*, 55 N. H. 423 ; *Kent* v. *Waite*, 10 Pick. 138. But land cannot be appurtenant to land : the mortgagor's interest in the spring was not an easement, but the fee : and the rule is, that upon a conveyance of land there is no implied creation and grant of an easement in the grantor's adjoining land.    *Mullin* v. *Eaton*, Hillsborough, December, 1889.

The defendants contend that whatever easement Bent and his successors in title had in the soil of Newton has been extinguished by twenty years' non-user.    A distinction is made in the books between easements acquired by deed and those acquired by prescription.    As to the former, the well settled doctrine is, that " no length of time of mere non-user will operate to impair or defeat the right.    Nothing short of a use by the owner of the premises over which it was granted, which is adverse to the enjoyment by the owner thereof, for the space of time long enough to create a prescriptive right, will destroy the right granted."    Wash. Ease. (ed. 1863) 551 ; Ang. Wat. (7th ed.), ss. 240-252 ; 3 Kent Com. 448 ; *White* v. *Crawford*, 10 Mass. 183 ; *Arnold* v. *Stevens*, 24 Pick. 106 ; *Owen* v. *Field*, 102 Mass. 90, 114 ; *Smyles* v. *Hastings*, 22 N. Y. 217, 224 ; *Butz* v. *Ihrie*, 1 Rawle 218, 222 ; *Townsend* v. *McDonald*, 12 N. Y. 381 ; *Farrar* v. *Cooper*, 34 Me. 394, 400 ; *Eddy* v. *Chace*, 140 Mass. 471.

In this case the plaintiff's easement, if he has one, was acquired by deed.    A mere non-user of the easement without proof of adverse enjoyment by the owner of the land is not sufficient evidence of an abandonment of the right.    There is no such evidence in this case.    The water was stopped from flowing through the aqueduct after the fire in 1865, and has remained stopped to the present time.    But it does not appear that Newton or his successors in title stopped it or performed other acts of adverse enjoyment prior to the trespass complained of, committed in 1889.    The presumption is just as great, if not greater, that Bent stopped it to prevent waste or damage, as that the other party stopped it for the purpose of bringing about an extinguishment of the easement twenty years later.    And the finding of the referee, that to the time of the alleged trespass neither the plaintiff nor his grantor had been disturbed in the use of the water since the deed of 1859, is conclusive that there has been no adverse interference with the aqueduct.

The plaintiff may amend his declaration at the trial term by filing a bill in equity (*Metcalf* v. *Gilmore*, 59 N. H. 417, 432) for a reformation of Newton's and Dickinson's deeds and Bent's mortgage, and the bill may be tried at the earliest convenience of the parties. The facts not found may be material in the suit at law.

There is no legal difficulty in the plaintiff's heirs' (the plaintiff having deceased) having all the conveyances reformed and their rights established according to the intent of the parties. That may require his administrator, heirs, devisees, or all, to be made parties to the bill. It is unnecessary to decide whether it may be inferred, from the facts that appear in the case, that the intent was to mortgage and convey the spring, for trial of a reformatory bill will bring out all the facts and enable the trial judge to do equity.

All concurred.