Hillsborough
No. 84-209

DAVID R. TITCOMB & a.

v.

DORIS V. ANTHONY

April 19, 1985

*Hatfield & Bosse P.A.*, of Hillsborough (*Leigh D. Bosse* on the brief and orally), for the plaintiffs.

*Brown & Nixon P.A.*, of Manchester (*Frank E. Kenison* on the brief and orally), for the intervenors, George and Ruth Tewksbury.

*Brighton, Fernald, Taft & Hampsey P.A.*, of Peterborough (*Silas Little, III*, on the brief and orally), for the defendant.

BROCK, J. At issue in this case is the status of an easement for a right of way over the defendant's land. The Master (*Charles T. Gallagher*, Esq.), whose report was approved by the Superior Court (*Flynn*, J.) on March 29, 1984, found that an easement by grant had once existed, but that the easement had been extinguished by adverse possession. We hold that on the evidence in the record no more than a partial extinguishment of the easement could have occurred, and we accordingly reverse and remand the case to the trial court.

From 1939 until 1945 both the plaintiffs' and the defendant's property belonged to the intervenors in this case, the Tewksburys. In 1945 the Tewksburys conveyed the more southerly of the two parcels, which abuts West Main Street in Hillsborough, to the defendant's predecessor in title. The deed was made subject to an easement creating a right of way between West Main Street and the northerly parcel.

The reserving clause, which duplicated a similar clause in an earlier deed to the property, read in part as follows: "The said grantors reserve unto themselves and those claiming under them a right of way over the above described premises in going to and from said Main Street and said other land of the said grantors. Said right of way may be used for any and all purposes." No more explicit description of the right of way is given.

The two parcels of land are separated by a stone wall. There is a barway, or gap, in the wall about 24 feet wide. Over the years, trees have grown up near the barway making it difficult for any vehicle to pass through it, but they are not an impediment to pedestrians.

The defendant (with her husband, now deceased) purchased the southern parcel in 1952, subject to the right of way. Throughout the ensuing 33 years, she has cultivated extensive vegetable gardens on the property, along with large numbers of berry bushes and fruit trees.

It is undisputed that, from at least 1952 until the present, there has been no evidence on the ground of the right of way described in the deeds, other than the barway in the stone wall. Nevertheless, there was evidence that Mr. Tewksbury had walked across the southern parcel to reach the northern parcel on several occasions before he and his wife sold the northern parcel to the plaintiffs in 1983.

Shortly after buying the land, the plaintiffs filed with the Hillsborough Planning Board a proposal to build multiple-family housing on the northern parcel. Part of this proposal contemplated the use of the right of way over the defendant's land for vehicular access to the new housing. The defendant thereupon notified the planning board that there was no right of way over her land.

The plaintiffs then initiated this action. They sought an order enjoining the defendant from interfering with the right of way, as well as money damages for alleged past interference. In her answer, the defendant did not deny that a right of way had once existed, but argued that the right of way had been "extinguished through adverse possession and/or abandonment."

The master found that the Tewksburys had "exercised their rights, albeit infrequently and on foot," to use the right of way on

various occasions since 1945. He accordingly ruled that there was no intent to abandon the right of way. He held, however, that the defendant's use of her land constituted possession adverse to the existence of the right of way, and that the easement had therefore been extinguished after twenty years of such possession. The plaintiffs appealed.

■■ The master's finding that the Tewksburys had not abandoned the easement was proper. It was not necessary for the plaintiffs to show that the Tewksburys had used the easement. *Howard v. Britton*, 67 N.H. 484, 487, 41 A. 269, 270 (1893). Abandonment of an easement must involve "clear, unequivocal and decisive acts" by the owner of the dominant estate, *Gagnon v. Carrier*, 96 N.H. 409, 411, 77 A.2d 868, 870 (1951), "manifesting either a present intent to relinquish the easement or a purpose inconsistent with its further existence." *Parsons v. New York, New Haven, & Hartford R.R.*, 216 Mass. 269, 272, 103 N.H. 693, 695 (1913). There was no evidence that any such acts occurred in this case. Even if the master credited the defendant's testimony that Mr. Tewksbury verbally asked her permission before walking across her land, such a request is not the kind of act contemplated by *Gagnon*. Thus, had evidence refuting this testimony been excluded, as the defendant argues it should have been, the defendant could not have met her burden of proving abandonment.

■ It is well established that an easement acquired by grant may be extinguished through continuous adverse possession for a period of twenty years. *Howard v. Britton*, 67 N.H. 484, 487, 41 A. 269, 270 (1893). Anyone claiming adverse possession must "show that the nature of her use . . . was sufficient to put the owner on notice that an adverse claim was being made" to the owner's rights. *Avery v. Rancloes*, 123 N.H. 233, 238, 459 A.2d 622, 625–26 (1983). There is a difference, however, between the type of adverse possession sufficient to acquire fee title to property and the type necessary to extinguish an easement. *Regan v. Hovanian*, 115 N.H. 40, 43, 332 A.2d 177, 179 (1975).

■ One author summarizes the requirements in the latter type of case as follows:

> "Since the servient tenant [*e.g.*, the defendant here], as long as he does not interfere with the right of user, may use his land in any manner he desires, an act which serves to start the prescriptive period in his favor must be one *clearly* wrongful as to the owner of the easement. This requires that the use of the land by the servient tenant

> must be one which is incompatible or irreconcilable with the authorized right of use. Thus, the erection of permanent structures, such as building or walls, or other obstructions seriously interfering with the right of use, are sufficient to extinguish the right. The erection of fences or gates, however, is often compatible with the continued use of an easement, and thus is not adverse. Even the use of the servient land for farming purposes does not necessarily bar the exercise of an easement. But where the land over which the use is authorized is fenced off and used by the servient owner in a way which indicates the exercise of exclusive dominion by him incompatible with the future exercise of the easement, such use is adverse and thus sufficient to commence the prescriptive period."

3 POWELL ON REAL PROPERTY ¶ 424, at 34-258 through 34-260 (1984 ed.) (emphasis in original; footnotes omitted).

██ In this case, the master found that the Tewksburys had "exercised their rights" by walking across the defendant's land to the northern parcel. This necessarily implies that the defendant's use of her land was not such as to impair seriously the passage of people on foot from West Main Street to the plaintiffs' land. Because the defendant's possession was thus not adverse to passage on foot, the master's finding that the easement was totally extinguished cannot stand.

 This does not mean that the plaintiffs' use of the right of way is unrestricted. Though there are few precedents on the matter, we have no doubt that the scope of an easement may be altered when it is adversely possessed as to *some* uses, though it is not so possessed as to *all* uses. *See Pappas v. Maxwell,* 337 Mass. 552, 557, 150 N.E.2d 521, 524–25 (1958) ("Where . . . acts of the servient tenant render the use of only part of a right of way impossible, the easement is extinguished only as to that part."). If, on remand, the trial court should find that the defendant's use of her land was entirely irreconcilable with certain uses of the plaintiffs' right of way, and remained so continuously for twenty years, it may find that the plaintiffs' easement was extinguished as to those uses.

██ Moreover, every right of way of the type involved here is subject to the "rule of reason." *See Cote v. Eldeen,* 119 N.H. 491, 493–94, 403 A.2d 419, 420 (1979). The rule:

> "provides that the rights of the parties to a right-of-way are questions of fact that must be determined in light of the surrounding circumstances, including the location and

uses of both parties' property, and by taking into consideration the advantage of one owner's use and the disadvantage to the other owner caused by that use."

*Delaney v. Gurrieri*, 122 N.H. 819, 821, 451 A.2d 394, 395 (1982) (citing *Sakansky v. Wein*, 86 N.H. 337, 339, 169 A. 1, 2 (1933)).

There is evidence in the record that the plaintiffs have completed construction on their proposed new housing, with access roads and utilities running through property other than the defendant's. Further, the planning board's approval of the plaintiffs' housing proposal expressly forbade use of the disputed right of way for vehicular access. On remand, the trial court should consider these facts, together with all the other relevant circumstances, in determining the advantages and disadvantages to the parties that would result from all of the plaintiffs' proposed uses of the right of way.

*Reversed and remanded.*

KING, C.J., did not sit; the others concurred.