Horner v. Stillwell.

---

## JACOB A. HORNER v. CHARLES C. STILLWELL.

1. The declarations and admissions of a former owner of the property made during the existence of his title, are competent evidence against a party who has derived title through such former owner.
2. The extent of the right of flowage which is acquired by prescription, is not measured by the claim which the owner of the dominant tenement makes during the period of prescription, nor of the height of the structure of the dam he maintains on his own land. It is limited to the lines of the actual enjoyment of the easement, as evidence of the extent to which the land of the owner of the servient tenement was habitually or usually flowed during the period of prescription.
3. Where, in a conveyance of land, a description is given which is ambiguous or variable, it is competent by parol evidence to show that the parties at the time of the conveyance, agreed upon a certain line, or some monument, whereby to ascertain the line as the boundary intended.
4. In such case, the monument becomes, in effect, a part of the description, by convention or agreement of the parties.
5. The evidence of title to incorporeal hereditaments, and of the transfer of it, is governed by the same principles which apply to other real estate. In analogy to the statute of limitations, a possession of a servient tenement adverse to the existence of the easement, continued for the full period of twenty years, will raise the presumption that the right has been extinguished by release, which will operate as a bar.

---

On rule to show cause.

The plaintiff is the owner of two tracts of land situate on the north side of Black creek, in the county of Burlington, known as the Kerr and Pearce tracts. The defendant is the owner of a tract of six acres of land on said creek, below the plaintiff's lands next adjoining the Kerr tract, which he ac-

quired by purchase from one Charles S. Burtis, by deed dated March 24th, 1865. On the defendant's lands is a mill which is driven by the waters of the creek, which are pent back into a pond by means of a dam erected on the defendant's lands. The mill is upon an ancient mill site, which dates back as far as the year 1702. The title to the Burtis tract and the Kerr tract was originally in the same owner, Henry Beck, to whom a survey of a tract comprising both parcels was made in February, 1688. From Beck, the parties, by divers mesne conveyances, respectively acquired title to the said two parcels of land.

In the earlier deeds in the chain of defendant's title, the premises he owns are described by metes and bounds, "together with the grist-mill, flood-gates, mill-stones, dam, mill-pond, out-houses, with all and every the appurtenances thereunto belonging."

The plaintiff acquired title to the Kerr lot by deed made by Ann Kerr, dated 25th of March, 1858. Annexed to a deed made by Godfrey Beck to Thomas Taylor, May 1st, 1750, for a tract within the boundaries of which is included the Kerr lot, is a note certifying that Taylor, before the sealing and delivery of the deed, covenants that Joseph Reckless, who was then the owner of the defendant's lot, should have the privilege of digging and carrying away gravel for repairing his mill-dam, "and all other privileges concerning the said mill, mill-pond, flowings, and privileges," &c. In 1834, one Benjamin Taylor conveyed to Stacy Kerr, by a deed in which the call in one course is " to the edge of the mill-pond," thence " down the edge of the mill-pond, the various courses thereof, four chains and ninety-six links, if measured in a straight line to," &c. To the Pearce lot the plaintiff acquired title by deed dated March 19th, 1856, in which there is a call for a course " to the northerly edge of Charles S. Burtis' mill-pond, thence down the northerly edge of said mill-pond at a full head, the several courses thereof, to the upper corner of Stacy Kerr's land."

The defendant entered into possession of the mill property

in March, 1865, and this action was brought in September, 1868, to recover damages for overflowing the plaintiff's land by back-water from the defendant's dam.

At the trial before the Burlington Circuit, a verdict was found for the defendant, whereupon a rule to show cause why the verdict should not be set aside was granted.

Argued at June Term, 1871, before the CHIEF JUSTICE and Justices DALRIMPLE, DEPUE, and VAN SYCKEL.

For plaintiff, *M. Beasley, Jr.,* and *E. T. Green.*

For defendant, *James Wilson* and *Abraham Browning.*

The opinion of the court was delivered by

DEPUE, J.   The controversy at the trial was with respect to the height to which the defendant was entitled to hold the water in the pond by means of his dam, under the titles of the respective parties.   The plaintiff made no complaint as to the manner in which the water had been held while Charles S. Burtis was the owner of the mill, which was from the spring of 1853 until his conveyance to the plaintiff, in 1865.

The clear weight of the evidence in the cause is that, since the defendant has been in the occupation of the mill, the water in the pond has been habitually held at a higher level than was accustomed before.   The testimony of the defendant's own witnesses makes this manifest.   In the management of the gates, the defendant testifies that he is governed by a head-mark, which consists of a block of wood placed on one of the breast-posts of the lower water-wheel, and that the water had been held up to that head nearly all the time since he has occupied the mill.   This head-mark is eleven feet and one inch above the stream sill, and two inches and a half above the flush-gates.   The testimony is, that while Daniel Burtis and his son Charles were the owners of the mill, it was the custom to control the height of the water by raising these gates.   Lowberry Brown, who was miller for Charles S.

Burtis in 1863, testifies that it was the custom to keep one, and sometimes two, of these gates up, so as not to back-water on the plaintiff, and that this was done by Mr. Burtis' orders. The plaintiff's counsel then offered to prove that Charles S. Burtis, the defendant's grantor, had said that the gates of the dam must be kept up, or Horner's land would be back-watered. This offer was overruled by the court.

The offer related to declarations of Burtis while he was the owner of the property. The declarations and admissions of a former owner of the property, made during the existence of his title, are competent evidence against a party who has derived title through such former owner. 1 *Greenl. Ev.*, § 189; *Townshend* v. *Johnson*, 2 *Penn.* 706; *Tomlin* v. *Cox*, 4 *Harr.* 76. The testimony offered was competent evidence, and should have been received.

The title of the defendant, or his right to raise the pondage of his dam to the height claimed, depends, in a great measure, upon the competency and effect of the testimony in relation to the head-mark.

When the block which is called the head-mark was placed there, or by whom, or for what purpose, does not appear. As evidence of a prescriptive right to flow the lands of the plaintiff or others, upon the stream, the testimoney is irrelevant. The extent of the right of flowage which is acquired by prescription is not measured by the claim which the owner of the dominant tenement makes during the period of prescription, nor by the height of the structure of the dam he maintains on his own lands. It is limited to the lines of the actual enjoyment of the easement, as evidenced by the extent to which the land of the owner of the servient tenement was habitually or usually flowed during the period of prescription. *Carlisle* v. *Cooper*, 4 *C. E. Green*, 256; *S. C. on appeal*, 6 *Ib.* 577.

Testimony of the existence of a mark maintained as a water-line by the owner of a mill on his own premises, will undoubtedly be competent, where it is shown that the water was actually held to the line of such mark. The office of

such proof in such case is to fix with accuracy the extent to which the right was in fact exercised during the prescriptive period. Unless accompanied by proof of actual user, with such continuity of enjoyment as will establish a prescriptive right, the testimony is valueless. There is no evidence of such user in this case.

It is obvious, from the charge of the court and the argument of counsel here, that the existence of this head-mark was regarded as having another and more important effect on the rights of the parties than would have been given to it upon a claim of a mere prescriptive right.

In the chain of title to the Pearce tract, the boundary along the pond is " down the northerly edge of said mill-pond, *at a full head*, the several courses thereof." When that description was first used does not appear. It is insisted that the office of this head-mark was to indicate what height of water was intended by " a full head." Where, in a conveyance of land, a description is given which is ambiguous or variable, it is competent by parol evidence to show that the parties, at the time of the conveyance agreed upon a certain line, or some monument, whereby to ascertain the line as the boundary intended. *Waterman* v. *Johnson*, 13 *Pick.* 261. In such cases the monument becomes, in effect, a part of the description by convention or agreement of the parties. The one party cannot set a monument which accords with his understanding of what was meant, and thus make evidence against the other. It must be shown affirmatively to have the sanction of the party against whom such determination of an ambiguous description is invoked, before he can be affected by it in the slightest degree. Whether the proof adduced be direct or circumstantial, it will be inoperative, if it fails to show that the monument set had the approbation and consent of the party, or those with whom he is in privity of estate.

The testimony as to the existence of this block prior to the time when Daniel Burtis acquired title to the mill property, is that of Charles S. Burtis. He testifies that about the year

1824, John Reckless, who was the owner of the mill property from 1771 until 1819, came to the mill : "He said he came down to show my father where the head-mark was; father was not at home; he asked me if I was Daniel Burtis' son; I said I was; said he, I will show you the head-mark; and as we were turning around the corner of the mill he said, I am an old man, and I felt it to be my duty to come and show your father where the head-mark was; then he took me up and showed me the mark—the cleat of which I have spoken; my knowledge of the height of the head is derived solely from Mr. Reckless' statements to me; that was the only authority I ever had."

To the admission of this evidence the plaintiff's counsel objected, and it was admitted under exception.

This testimony was illegal. The principle upon which the competency of declarations of a former owner of lands, during the existence of his title, rests, is, that they are against his interest. They are admissible against an owner who has succeeded to his title on the ground of the identity of interest arising from the privity in estate. Except where such identity of interest exists in the party against whom they are offered, they are inadmissible. 1 *Greenl. Ev.*, § 189. There is no privity in estate between the plaintiff and Mr. Reckless, and his declarations were mere hearsay testimony, and should have been excluded.

With the exception of proof of the fact that Kerr, in 1834, ten years after the conversation of Reckless with Burtis, was employed in repairing the mill, and measured the distance from the mud-sill to this head-mark, there is no evidence tending to show that any person through whom the plaintiff claims had any knowledge of the existence of this head-mark.

The declarations of Reckless, which were admitted, as well as the admission of Burtis to Brown, which was excluded, relate to material parts of the case. The charge of the court to the jury, that it was in evidence that those from whom the defendant claims had the right to hold the water as the defendant held it, must have been made with reference to the

declarations of Reckless, as testified to by Burtis. Whether the right ever existed by force of the description in the title deeds of the parties, is the chief matter of controversy in the cause. There was no direct testimony to support the assumption that such right had been proved, except the declarations of Reckless. The question proposed to be put to Brown, which was excluded, tended to show that no such right was claimed.

It was also an issue in the cause whether, if those through whom the defendant acquired title once had the right of flowage to the extent claimed, such right had not been extinguished. The court charged the jury that non-user for twenty years was not conclusive against the defendant; that it was evidence from which the jury might infer an abandonment of the right to hold the water as the defendant claims to hold it, but that the jury were not bound to infer abandonment from non-user alone; that if they were satisfied that the non-user was merely for the convenience of the defendant, and those under whom he claims, and without any intention to abandon the right, the verdict should be for the defendant. This part of the charge is in conformity with the opinion of the Chancellor and the Court of Appeals, in *Veghte* v. *The Raritan Water Power Co.*, 4 *C. E. Green* 142; 6 *Ib.* 463.

The plaintiff's counsel made request to charge, " that if the jury believe that Stacy Kerr, in the year 1834, raised a bank along the pond and filled in behind the same, so as to connect the said bank with the main shore, and if they believe that the land so formed by Kerr was used by him, or those claiming under him, as his or their land, for twenty years, it is an extinguishment of the right of any owner of the Stillwell mill to flow the land." This request was refused.

In *Veghte* v. *The Raritan Water Power Company*, the Chancellor held, that although non-user for twenty years, unaccompanied by acts showing the intention of abandonment, will not extinguish an easement in such cases, adverse possession, as well as non-user, is necessary to effect the extinguishment. In *Crossley* v. *Lightowler*, *L. R.*, 3 *Eq. Cas.* 277 ;

*S. C. on appeal,* *L. R.*, 2 *Ch. App.* 478, it was decided that an actual disuser of an easement for twenty years, during which time others had acquired adverse rights, destroys the right to the easement. The same doctrine is recognized by Baron Alderson, in *Ward* v. *Ward,* 7. *Exch.* 838 ; and by Vice Chancellor Malins, in *Cook* v. *Mayor of Bath, L. R.,* 6 *Eq. Cas.,* 178. Even where the cesser of use has not been for twenty years, adverse acts on the part of the owner of the servient tenement, which have been acquiesced in by the owner of the easement, are material for the consideration of the jury on the question of abandonment. *The Queen* v. *Chorley,* 12 *Q. B.* 573. Under such circumstances, abandonment arises out of the principles of an equitable estoppel. *Slokoe* v. *Singers,* 8 *E. & B.* 31. The Court of Appeals, in *Raritan Water Power Co.* v. *Veghte,* did not establish a different doctrine. The court determined, as a question of fact, that, under the circumstances of that case, there had not been an enjoyment adverse to the easement; and the cases above cited were cited with approbation by Mr. Justice Bedle in the opinion of the court.

The evidence of title to incorporeal hereditaments, and of the transfer of it, is governed by the same principles which apply to other real estate. In analogy to the statute of limitations, a possession of the servient tenement adverse to the existence of the easement, continued for the full period of twenty years, will raise the presumption that the right has been extinguished by release, which will operate as a bar. It was so held by the Supreme Court of Pennsylvania in *Yeakle* v. *Nace,* 2 *Whart.* 123 ; and the same doctrine has been approved in a number of cases. *Butz* v. *Ihrie,* 1 *Rawle* 218 ; *Hoffman* v. *Savage,* 15 *Mass.* 130–132 ; *Arnold* v. *Stevens,* 24 *Pick.* 106 ; *Jennison* v. *Walker,* 11 *Gray* 423–425 ; *Townshend* v. *McDonald,* 2 *Kernan* 382 ; *Smylies* v. *Hastings,* 22 *N. Y.* 217 ; *Drewitt* v. *Sheard,* 7 *C. & P.* 465; *Wright* v. *Freeman,* 5 *Harr. & Johns.* 467 ; *Shields* v. *Arndt,* 3 *Green's C. R.* 235 ; *Washburne on Easements* 551. It may be difficult to prove that such possession is adverse, especially when

Horner v. Stillwell.

the easement is discontinuous, but it will be a question of fact for the jury under all the proofs in the cause, whether the possession, for the period of twenty years, has been hostile to the existence of the easement under a claim of right inconsistent therewith, with such circumstances of notoriety as to be adverse.

The request of the plaintiff's counsel to charge the proposition submitted was properly refused. It assumes that the facts therein stated as a matter of law extinguished the right of the owners of the mill to flow the plaintiff's land. But the jury should have been instructed that an adverse possession, hostile to the existence of the easement, continued for twenty years, will raise the presumption of a release of the right, which will bar such right, leaving the question whether the possession was adverse as a question of fact for the jury.

As the facts will be again submitted to a jury, it is unnecessary at this time to express an opinion as to the weight of the evidence.

The verdict must be set aside and a new trial granted.