MARGARET CARNEY *vs.* JAMES HENNESSEY ET UX.

Third Judicial District, New Haven, January Term, 1905.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

In an action in the nature of trespass *qu. cl. fr.*, the parties, who owned adjoining premises, were at issue as to the location of their boundary line, each claiming title to a strip of land about four feet in width between their respective buildings. Both properties were formerly part of a larger tract owned by *F*, who, in carving out in 1874 the lot which finally came to the plaintiff, left the location of its north and south boundaries so uncertain that the description in the deed might or might not have included the strip in dispute ; and the plaintiff based her ownership of the *locus* upon this deed. *Held* that under these circumstances resort must be

had to the acts and conduct of the parties at and after the time when possession under the deed was given.

The plaintiff claimed that one of $F$'s devisees had in 1885 acquired title to all the land south of that which $F$ had sold in 1874, and that the aggregate width of the two tracts which such devisee had since conveyed, as described in his deeds, established her contention as to the location of the line in dispute ; and requested the court to charge the jury that unless the defendants could prove a title by adverse possession to land north of such line,.they had no defense to the action so far as her title was concerned. *Held* that inasmuch as the burden rested upon the plaintiff to prove her title to the four-foot strip, the court should not have complied with the request, which practically assumed that the devisee's deeds above referred to were conclusive, and ignored the question whether a fair preponderance of the evidence really supported the plaintiff's claims.

The trial court charged the jury that if $F$, in his deed of 1874, indicated a certain point as the commencement of the southern boundary, the line would run from that point clear through parallel to the south boundary of the large tract. *Held* that in this respect also the charge was erroneous.

A person who acts as agent is not thereby precluded from acquiring title to the land ·of his principal by adverse possession. The existence of such a confidential relation may render it more difficult for such person to show that his entry or other assertion of ownership was in his own behalf rather than for his principal ; but it does not render him incapable of acts of disseisin or of acts adversary in character.

A trial court should be cautious about adopting bodily the requests to charge made by counsel, since errors in statement of fact and of law are to be expected if opportunity is freely afforded counsel to restate, in the charge of the court, their arguments to the jury.

The general rule that one cannot impeach his own witness, does not prevent a party who has called his adversary to prove a particular point, which the witness unexpectedly denies, from asking him if he did not testify to the contrary on a former trial of the case.

The testimony of the alleged principal or agent, although attainable, is not essential to prove the agency : other evidence is admissible.

Argued January 18th—decided March 9th, 1905.

ACTION in the nature of trespass *qu. cl. fr.*, brought to the Court of Common Pleas in New Haven County and tried to the jury before *Bishop, J. ;* verdict and judgment for the plaintiff, and appeal by the defendants. *Error and new trial ordered.*

In 1873 Joseph Fairchild was the owner of a triangular piece of land bounded northerly by the junction of State and Olive streets about 25 feet; westerly by State Street about 160 feet; easterly by Olive Street and land of the railroad company about 188 feet, *i. e.*, by Olive Street about 145 feet, and by the railroad land about 43 feet (the railroad line running about parallel with State Street); and southerly by land of one Lewis about 116 feet. On this lot stood his homestead, being about 25 feet front and 60 feet deep, with a projection on the northerly side of about 4 feet. The front was on State Street, the doorsteps extending to or beyond the street line. The southerly line of the building was about 51 feet, and the projection on the north about 80 feet, from the Lewis land. The building was then and ever since has been used as a dwelling-house.

In 1873–4 Fairchild built upon the land north of his house

a building about 24 by 36 feet in size. The building faced on State Street, the doorsteps extending to or near the east line of State Street; the first floor was intended for a store and the upper floors for a tenement. The southern face of the building was about 4 feet from the northern face of the projection of his own house. On October 16th, 1874, Fairchild conveyed to his daughter, Mrs. Easton, a piece of land described in his deed of that date as follows: "bounded westerly by State Street 28 feet; southerly, by my own land, 90 feet, more or less; easterly, by Olive Street, 35 feet, more or less; and northerly, by my own land, 67 feet, more or less; hereby conveying the brick store and dwelling-house recently erected by me on the land above described." On February 4th, 1892, the plaintiff became owner of the land and building conveyed by Fairchild to his daughter.

The trespasses alleged in the complaint were committed on land lying south of the south face of this building, and the plaintiff's right of recovery depended upon the proof of her ownership and possession of the land lying south of said building.

Any further facts necessary to an understanding of the case are sufficiently stated in the opinion.

*George E. Beers* and *Frank S. Bishop*, for the appellants (defendants).

*Charles S. Hamilton*, for the appellee (plaintiff).

HAMERSLEY, J. The acts of trespass complained of were done on a piece of land lying between a northerly line including the face of the plaintiff's building, and a southerly line including the face of the projection of the defendant's building, the distance between the face of the projection and the face of the plaintiff's building being about four feet. The plaintiff bases her claim of ownership of this land, or that portion of it on which the alleged trespass may have been committed, upon the deed of Joseph Fairchild to his daughter, Mrs. Easton, of October 16th, 1874. Fairchild owned at the

time of conveyance not only the land conveyed, but the land to the north and south of it, and described the land conveyed as bounded on the north and south by his own land. He gives no point as the beginning or ending of any of the boundary lines; the only certainty as to the location of the boundaries being that they must include the building he has recently erected, which is expressly conveyed by the deed, and presumably must exclude his own residence. Any location of the land conveyed which will give a frontage on State Street of 28 feet and on Olive Street of about 35 feet, and include the recently constructed building, 24 by 36 feet between the boundary lines, whether straight or not, measuring about 67 feet on the north and about 90 feet on the south, will conform to the description. It is patent that a location in substantial accord with the description may exclude all the land in dispute, or may include any part of it; and that there is nothing in the deed either by way of direct description or reference to monument, course, or distance, by which to determine the real location, within this limitation, of the land conveyed. In such a case, resort must be had to the acts and conduct of the parties at and following the time when possession under the deed was given. In this case the burden of proof is on the plaintiff, and she cannot affirm ownership of land by virtue of the Fairchild deed, southerly of a boundary line including the south face of her building, without resort to evidence outside the deed that a line farther south was intended by the parties and accepted by them at and after the time of the conveyance. The plaintiff insisted that the conduct of the parties at the time of the conveyance to Mrs. Easton proved that the land intended to be conveyed, and of which she took possession in pursuance of the deed, included land southerly of the building conveyed to her, and that the southerly boundary line of this land was 82 feet from and parallel with the southerly boundary line of Joseph Fairchild's premises, viz, the line dividing his land from that of Abram Lewis.

The defendants insisted that the evidence proved that the building conveyed to his daughter was built by Fairchild on

the line of an existing fence dividing the land used as his home lot or yard from that used for other purposes, and that at the time of the conveyance the south face of the new building and the remainder of said fence extending through to Olive Street formed the northern line of his said yard and the southern line of the land accepted by his daughter as that conveyed by the deed; and that the evidence also proved that from the time of the conveyance, said Fairchild and the subsequent owners of his land had continuously occupied and used the land lying south of said line.

In 1881 the land of Joseph Fairchild passed by devise to his five sons as tenants in common, and by means of releases between themselves Edward L. Fairchild, in 1885, became sole owner of an equity of redemption of that portion of his father's land adjoining and south of that conveyed to Mrs. Easton in 1874. This equity he conveyed by quitclaim deed to Spier and Straus in February, 1891, who in the following month conveyed the land by warranty deed to the defendants. In both deeds the land is described as bounded southerly on land formerly of Joseph Fairchild, and westerly on State Street 46 feet. It appears from the plaintiff's requests to charge, that upon argument to the jury the plaintiff claimed that the documentary and other evidence proved that Edward L. Fairchild, one of the five sons to whom Joseph Fairchild had in 1881 devised all his real estate, became, in 1885, by force of the various deeds of release between these sons, which were produced in evidence, the sole owner of all Joseph Fairchild's land south of that which he had conveyed to Mrs. Easton; that subsequently he conveyed, in 1885, to his brother Sidney B. Fairchild, that portion of this land lying south of a line commencing on State Street at a point just 36 feet north of the land of Abram Lewis and running easterly to the land of the railroad company, being parallel with and 36 feet from the land of Abram Lewis, which formed the southern boundary of Joseph Fairchild's original lot; and in 1891 conveyed to Spier and Straus, who immediately afterwards conveyed to the defendants, just 46 feet of land as measured on State Street,

bounding it northerly on land formerly of Joseph Fairchild, and southerly on that he had conveyed to his brother Sidney; that Edward never conveyed any more than these two pieces of land, making in all 82 feet of land; that the deed of Edward to the defendants' immediate grantors conveyed no land north of a line running from State Street to Olive Street parallel with and 82 feet from the north boundary of the Abram Lewis land; and therefore, unless they could prove a title by adverse possession to land north of this line, the defendants had no defense to this action, so far as the plaintiff's title to the land is concerned.

It is obvious from an inspection of the record, that the facts affirmed in this claim are open to more or less serious question, and that in any event the conclusion is unsound. In view of the state of evidence as recited in the finding, the defendants had a defense to the action so far as the plaintiff's title to the land is concerned, unless the plaintiff sustained her burden of proving that the deed of Joseph Fairchild to Mrs. Easton included land south of the building conveyed by it, and upon this question the deeds of Edward Fairchild in 1885 are not conclusive. The plaintiff put her argument in support of this claim in the form of an affirmative proposition of fact and law, and requested the court to adopt this proposition as its own, and so charge the jury. This request should have been absolutely denied. The court did charge the jury as requested in the language of the plaintiff, attempting, however, to indicate by the interpolation of a word or two the facts stated as affirmed by the court, and those stated as claims of the plaintiff. The erroneous conclusion was charged unqualifiedly in the language of the plaintiff. The court substantially told the jury that if Edward Fairchild conveyed to the defendants' grantors only the land south of a line parallel with and 82 feet distant from the northern boundary of the Abram Lewis land, then, unless the defendants proved a title by adverse possession to land north of this line, " they have no defense to this case so far as the title to the plaintiff's property is concerned." This error involves a misleading statement,

if not the substantial ignoring of a material and possibly controlling issue, namely : does a fair preponderance of evidence establish a line south of the southerly face of the plaintiff's building as the southern boundary of the land conveyed to Mrs. Easton by Joseph Fairchild at the time of conveyance ; and also a plainly unsound statement as to the relevancy and weight, in the determination of this issue, of the deeds through which the defendants derived title to their land from the devisees of Joseph Fairchild.

The court obviously erred in charging the jury that if they should find that the acts of Joseph Fairchild, at the time of his conveyance to Mrs. Easton, indicated a certain point on State Street as the commencement of the southern boundary line of the land conveyed, and should find this point to be 82 feet from the land of Abram Lewis, then the jury should consider that line as running through to Olive Street parallel with the northern boundary of the Lewis land and 82 feet distant therefrom.

The charge was manifestly erroneous in dealing with the subject of adverse possession. The testimony of witnesses produced by the defendants tended to prove that at the time of the conveyance to Mrs. Easton in 1874, Joseph Fairchild, in delivering to her possession of the land conveyed by and described in the deed, retained in his own possession his land lying south of the newly-constructed building and a fence extending from the southeast corner of that building to Olive Street, occupying it as it had been previously occupied by him ; that he continued such occupation until his death in 1881, and that from his death until the commencement of this.action such occupation was continued by his devisees and their grantees. The defendants contended that this continuous occupation, acquiesced in by Mrs. Easton, established, through this conduct of the parties at the time of the conveyance, the true location of the land conveyed, and also furnished evidence of a title by adverse possession in the defendants at the time the action commenced.

It appeared in evidence that after Mrs. Easton's death in 1876, no administrator was appointed on her estate, and that

her two daughters lived with their grandfather, Joseph Fairchild, until his death. The plaintiff claimed that during this time Fairchild acted as the agent of his grandchildren in renting and taking care of the building he had conveyed to their mother. The court charged the jury that if they found that Joseph Fairchild acted as the agent of his grandchildren in caring for their property and collecting their rents, then, under the law, no adverse possession could be commenced or acquired by him against them during the time he so acted as agent.

This was error. Clearly the law is not so that one owning land adjoining that of another, for whom he acts as agent in collecting rents and caring for his property, is, by force of this fact, legally incapable of any adverse and hostile assertion of ownership in the land occupied by him that can ripen into a title by adverse possession. This error is only one illustration of the error involved in the proposition laid down by the court for the guidance of the jury in this case, that "adverse possession can never arise where the party who attempts to gain the adverse possession is at the time of such attempt either the agent, guardian, or administrator of the person against whom he attempts to gain adverse possession." The existence of such confidential relation may operate as evidence that the agent or guardian, in a particular entry upon land or other assertion of ownership, does the act in behalf of his principal or ward and not on his own behalf, which will be more or less convincing according to the circumstances proved in each case; but does not render him legally incapable of doing any act that can constitute, as against his principal or ward, a disseisin or commencement of an adverse possession. *Martin* v. *Jackson*, 27 Pa. St. 504, 507, 510.

The errors above specified are some of those involved in the charge, and would be sufficient ground for a new trial, but their injurious effect is aggravated through their connection with a radical error, which consists in a confused and misleading presentation of the material issues and which permeates the whole charge. This result is due largely to

the course followed by the judge in adopting bodily the requests to charge made by counsel, and giving them to the jury as the charge of the court, with slight modifications inadequate to counteract the errors in statement of fact and law to be expected when counsel are allowed a free hand in framing a charge of the court so as to restate their arguments to the jury. The charge occupies about twenty-six pages of the printed record; of this, seventeen pages are almost verbatim in the language of counsel, sandwiched between a preliminary statement of eight pages and a formal conclusion of one page, in the language of the judge.

Most of the exceptions to rulings on evidence assigned as error are not well taken; the rulings objected to being either correct or harmless. The court, however, erred in holding that the defendants, having called the plaintiff to prove by her that her brother John Carney was her general agent in the management of her property, and she having testified that he was not, could not, for the purpose of showing a prior contradictory statement, ask her whether she had testified upon the former trial of this case that her brother was her general agent. The general rule, that a party cannot impeach his own witness, did not apply to this case so as to prevent the defendants from discrediting the statement made by the plaintiff through an examination of her as to contradictory statements made by her at the former trial.

There may be error, also, in the rulings upon evidence offered to prove that Mr. Beecher was the agent of William Forsyth, a former owner of the plaintiff's land. The court seems to have acted under the mistaken notion that if the testimony of the alleged principal and agent is attainable, other proof of agency cannot be produced.

It may be doubtful, in view of all the circumstances disclosed by the record, whether these errors in rulings upon evidence would in this case furnish sufficient ground for granting a new trial; it is unnecessary to consider this question; the errors in the charge are vital and compel a retrial.

There is error in the judgment of the Court of Common Pleas, and a new trial is ordered.

In this opinion the other judges concurred.