## CHIDESTER et al. v. CITY OF NEWARK et al.

### No. 5568.

District Court, D. New Jersey.

Jan. 17, 1945.

788

See, also, D.C., 31 F.Supp. 892.

Reed & Reynolds, of Newark, N. J., (Charles P. Rogers and William E. Clark, both of New York City, of counsel), for plaintiffs.

William H. Speer and Joseph V. Suter, both of Newark, N. J., for defendant Public Service Coordinated Transport Co.

Thomas M. Kane, of Newark, N. J., for defendant City of Newark.

MEANEY, District Judge.

This is an action in ejectment.

Plaintiffs are the heirs of one James Searing, who made three certain deeds to the Morris Canal and Banking Company dated January 11, 1830, March 28, 1833 and March 1, 1856. They claim an undivided interest in the lands described in said deeds on the theory that title to such lands has reverted to them by virtue of the abandonment of the use of the lands for canal purposes.

The canal company was chartered by act of the legislature in 1824. P.L.1824, p. 158, N.J.S.A. 13:12–1, entitled "An Act to incorporate a company to form an artificial navigation between the Passaic and Delaware Rivers." In 1924 the Canal was closed to navigation and ordered dismantled. Thereafter it ceased to be used for a canal. P.L.1924, p. 506, 1937 R.S. 13:12–13, N.J.S.A.

The plaintiffs allege that the deed dated January 11, 1830 and the deed dated March 28, 1833 are void because they insufficiently and improperly describe the premises which are attempted to be conveyed. They contend that the only effective transfer of title to property to which they now lay claim was by deed dated March 1, 1856. The defendants on the other hand contend that the deeds of 1830 and 1833 are valid and subsisting conveyances of the lands in question, and that the deed dated March 1, 1856, whatever the purpose for which it was made, could not be valid since it attempted to convey lands of which the grantor had already dispossessed himself by the previous conveyances of 1830 and 1833.

Extensive arguments have been offered to substantiate both contentions, but it is the view of this court that the first two deeds, those of 1830 and 1833, were valid and constituted an effective conveyance of the lands in question.

This determination would constitute an effective disposition of the question at issue.

The deed of 1830 recites in part as follows: "And whereas the said canal is laid across certain lands, lying in the township of Newark in the County of Essex

now belonging to James Searing of the township of Newark, aforesaid. Now be it known that I the said James Searing in consideration of the sum of One dollar lawful money of the United States to me in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, and for other considerations me thereunto moving, do hereby give, grant, bargain and sell, assign and convey to the said Morris Canal and Banking Company, their successors and assigns, all the said lands necessary and proper to be taken and occupied by them for the purposes aforesaid. Provided the lands so taken and occupied shall not exceed one and an half acres, for the said Canal Lock and other works and devices. To have and to hold the said lands and premises to the said The Morris Canal and Banking Company, their successors and assigns, so long as the same shall be used for the purposes for which the Morris Canal and Banking Company have the power to use the same by the true intent and meaning of the said Act."

The description in the portion of the deed above set forth is a general one, couched in broad terms, failing to specify or point out in detail the land intended to be conveyed. There is an absence of definite monuments, courses and distances. But the deed is by no means a blank. It fixes the locality as being the premises owned by Searing which the said canal "is laid across", "lying in the township of Newark" and not to exceed "one and an half acres". It is not an unlocated one and an half acres though it is an unbounded area. The purposes for which it was purchased indicate its proximate location.

It is a well-settled proposition that an instrument will not be declared void for uncertainty but will, whenever possible, be construed to give effect to the intention of the parties and to that end will be examined with all the light that contemporaneous facts may furnish.

■ The description may be general and need not be by boundaries, corners, distances, or monuments if only, with the aid of parol evidence, the location of the land is possible. 6 Thompson on Real Property, Perman. Ed., § 3267, p. 434.

■ An examination of the New Jersey cases cited, and independent research, has failed to reveal any cases in New Jersey which bear directly on the point in question. Perhaps that case which falls nearest in point and which is cited for both sides is McLaughlin & Stout v. Bishop, 35 N.J.L. 512. In that case, in an action in ejectment, the deed was not lacking in description, but contained an ambiguity in that certain lot numbers recited in the description in the deed were not in existence. The court therein stated in part: "What part of the description shall be rejected and what part shall control the grant, must depend, in a measure, upon the collateral facts and circumstances which appear in the case, the search in all cases being for the intention of the parties." And further "If, in the light of all the proofs in the case, the intent of the parties cannot fairly be drawn from the words used, the grant will be frustrated and no estate will pass." It seems apparent that the court in the McLaughlin case was restating the rule that no grant shall be declared void for uncertainty unless and until, in the light of all the proofs in the case and "after the most diligent search" the intention of the parties still cannot be ascertained to cure the uncertainty.

An examination concerning construction of deeds in New Jersey will, I believe, aid in determining to what extent New Jersey courts will go in order to ascertain the intent of the parties for the purpose of making effective the uncertain or vague descriptions in deeds. In Jackson v. Perrine, 35 N.J.L. 137, 142, the New Jersey Supreme Court stated (Depue, J.): "The law is well settled, that where the language of a deed admits of but one construction, and the location of the premises intended to be conveyed is clearly ascertained by a sufficient description in the deed, by courses, distances, or monuments, it cannot be controlled by any different exposition derived from the acts of the parties in locating the premises. But it is equally well settled, that when the language is equivocal, and the location of the premises is made doubtful, either by the insufficiency of the description, or the inconsistency of two or more parts of the description, the construction put upon the deed by the parties in locating the premises, may be resorted to, to aid in ascertaining the intention of the parties."

Again in Camden & Atlantic Land Co. v. Lippincott, 45 N.J.L. 405, it was stated: "If the words of a grant be ambiguous, the court will call in aid the acts done under it as a clue to the intention of the parties."

To the same effect is Spottiswoode v. Morris & Essex R. R. Co., 61 N.J.L. 322, 339, 40 A. 505, 511, wherein the Supreme Court of New Jersey said: "The general doctrine of the law is that, where the true location of the premises conveyed by a deed is doubtful, a practical location by consent of the parties will aid in the construction of the deed, and in some instances be conclusive as to the boundaries thus fixed, although the acquiescence be for a less period than 20 years." See also Opdyke v. Stephens, 4 Dutcher 83, 28 N.J.L. 83; Baldwin v. Shannon, 43 N.J.L. 596; Horner v. Stillwell, 35 N.J.L. 307.

■ It is evident that the courts in New Jersey have examined the acts of the parties and the practical location of boundaries by such acts to aid in the construction of vague, uncertain or ambiguous descriptions. A similar reliance I believe may be placed upon such acts in order to establish the intention of the parties where a deed might otherwise be void for uncertainty in description.

Decisions in other jurisdictions and textbook authorities would seem to sustain this view.

■ Thompson in 6 Thompson on Real Estate, Permanent Edition, subsection 3279 states: "A description which in itself does not identify the land may be cured by the acts of the parties." and further, on Page 452: "If the parties to a deed which does not describe the property with certainty, either before or after the date of the same, mark out or identify and appropriate certain land as the exact and identical parcel conveyed or to be conveyed by such deed, it will be effective to convey such land."

See also Devlin on Real Estate, 3d Ed., Vol. 2, subsection 851. This principal is illustrated in numerous decisions·in other jurisdictions. Interesting and enlightening is the annotation appearing in 68 A.L.R. 52, where in reference to general description and the admission of parol evidence it is stated: "A general description, as here used, exists where the language of the deed or mortgage is couched in broad terms, failing to specify or point out in detail the land intended to be conveyed. In such description there is an absence of definite monuments, course and distance, etc. The best example are those descriptions conveying property to a railroad."

Thus, in Indianapolis & V. R. Co. v. Reynolds, 1888, 116 Ind. 356, 19 N.E. 141, the granting instrument failed to define the width of the strip of land granted or to be occupied by the company. The court held that parol evidence was admissible to show the acts and declarations of the parties at the time of the execution of the instrument in order to determine their intention. To the same effect as the above is Messer v. Oestreich, 52 Wis. 684, 10 N.W. 6; Orvis v. Elmira, C. & N. R. Co., 172 N.Y. 656, 65 N.E. 1120, and other cases cited.

The analogy of conveyance by general description of property to railroads and to canal companies is evident.

The same general principle was followed by the Supreme Court of Maine in Simpson v. Blaisdell, 85 Me. 199, 27 A. 101, 35 Am.St.Rep. 348, where the court stated in reference to a description containing an unbounded half acre: "The original parties to the deed, long ago deceased, must have understood just what territory was supposed to be conveyed."

The same court then quotes Washburn on Real Property as follows: "Thus, to sell ten acres of land without describing any boundaries to the same would be void; but if the parties then go on, and stake out that quantity of land, and then take possession of it, it ascertains the grant, and gives effect to the deed." To the same effect see Carney v. Hennessey, 77 Conn. 577, 60 A. 129; Mettart v. Allen, 139 Ind. 644, 39 N.E. 239; Glos v. Holmes, 228 Ill. 436, 81 N.E. 1064; Davis v. Jones, Tex. Civ.App., 116 S.W.2d 461; Holley's Ex'r, v. Curry, 58 W.Va. 70, 51 S.E. 135, 112 Am.St.Rep. 944; Hamm v. City of San Francisco, 9 Cir., 17 F. 119.

■ The above general rules of law are applicable to this case, for in the absence of any applicable local law a Federal Court is free to apply general law as most likely comporting with the local state's outlook. Zephyr American Corporation v. Bates Manufacturing Company, 3 Cir., 128 F.2d 380, 387.

■ Three deeds were given to the Morris Canal & Banking Company. That of 1830 conveying all the lands necessary and proper across which the canal was laid provided the lands taken should not exceed one and an half acres. The second deed, that dated 1833, conveys an absolute estate.. The description in the second deed contains a manifest error in that the fourth call has been omitted. Such error in description does not necessarily render the

description void, for the remaining line may be determined by the lines given and if need be, the description may be aided by extrinsic evidence. 6 Thompson on Real Estate, Permanent Edition, sub-section 3275, p. 446, and cases cited.

■ But whatever error appeared in the description in the second deed, and whatever uncertainty existed in the description contained in the first deed, have been cured by the acts of the parties with respect to the lands conveyed. Acting on the deeds of 1830 and 1833 the grantee entered upon, occupied and used the lands without objection from the grantor, who acquiesced in that possession for more than a quarter of a century as regards the first deed and for twenty-three years as regards the second. This is itself a practical construction of the deeds by the acts of both parties to them, and in such cases the acts of the parties recognizing the premises conveyed are held by the court to make certain what otherwise might have been an uncertain or ambiguous description and the deeds will not after more than twenty years acquiescence by the grantor be declared to have been void for uncertainty. I find the deeds of 1830 and 1833 to have been valid conveyances.

It follows that the deed of 1856 was a nullity, the grantor having completely divested himself of all right and title to the premises attempted to be conveyed therein by the two earlier deeds.

It is not necessary here to explore the mind of the grantor to determine why the third deed was given. In all probability it was given to amplify the descriptions in the prior deeds and to obtain the wife's release of dower. I am satisfied that the deed of 1856 was not intended nor understood by the parties thereto to be in lieu of the earlier deeds. While satisfied of the ineffectiveness of the alleged deed of 1856 as a conveyance, it may be fruitful to consider the recitals therein as declarations and admissions by the would be grantors, indicative of the intention of the grantor in the 1830 and 1833 deeds. There seemed to be no question in their minds as to the nature and extent of the grants effected by the deeds of 1830 and 1833, as is evidenced particularly by reference to the statements in the 1856 deed that the description contained therein "embraces two tracts heretofore conveyed by the said James Searing to the party of the second part by deeds dated January 11, 1830 and March 28, 1833"

and that "The above tract of land is the same now occupied by the Morris Canal".

■ In an opinion rendered by Judge Fake of the United States District Court, District of New Jersey, in a previous hearing of this matter there was discussed the question of whether the granting clause in the 1830 deed might be limited by a condition found in the habendum. Judge Fake in his opinion, reported in 31 F.Supp. 892, found that it was settled law in New Jersey that the granting clause of a deed, and not the habendum, is the standard by which the estate granted must be measured and that it is only where the granting clause is silent that resort may be had to the habendum to ascertain the intention of the grantor. With the findings of Judge Fake in the opinion referred to, this court is in accord.

■ There is further and compelling argument against the contention of the plaintiff in the decision of the New Jersey Supreme Court in Graf v. City of Newark, 124 N.J.L. 312, 11 A.2d 764, 766. In that case the court held the use to which the lands in question are now devoted constituted " * * * no change in the use of the land as a public highway, that there was no reversion and that the City as successor in title to the canal company acquired a good and valid title from the State."

The habendum clauses in the deed here in question containing the limitation, and that involved in the Graf case, are almost identical. It will be seen also that the claimants in the instant case stand in a like position with the heirs in the Graf case. In the instant case as in the cited case, the plaintiffs claim under a deed given by their ancestor. Both claim on the fact that they are heirs and take by descent. The fact that in the Graf case the action was mandamus and in the instant case the action is in ejectment does not alter the legal question of reversionary rights. The form of action here is immaterial.

■ That this court is bound by the decisions of the courts in the state in which the controversy arises is no longer debatable. Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

There remains to be disposed of the question of whether federal jurisdiction

has been completely invoked under rule 19, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, which provides under subsection (a) relating to "necessary joinder" that persons possessed of a "joint interest" shall be made parties and joined on the same side as plaintiffs or defendants.

In Goldwyn, Inc., v. United Artists Corporation, 3 Cir., 113 F.2d 703, 707, the court referring to the above rule stated: "We conclude that the 'interest' referred to both in Rule 19 and the decided cases is one which must be directly affected legally by the adjudication."

In the instant case there are other persons standing in the same class with some of the plaintiffs. That is, they are heirs of James Searing, the grantor, and have interests similar to those of the plaintiffs in an undivided portion of the lands in question. It appears that some of the other heirs of James Searing reside in New Jersey and some reside in distant states.

In the case of Board of Chosen Freeholders v. Buck, 79 N.J.Eq. 472, 82 A. 418, 421, the defendants stood in a position essentially the same as that occupied by the plaintiffs here. In the cited case, in an action brought to quiet title, the defendants under the reverter clause of a deed, claimed as heirs of one of two grantors who were equal owners as tenants in common. In an opinion written by Vice-Chancellor Leaming, the court stated as follows: "I reach the conclusion that when the county of Cumberland permanently abandoned the use of the lot in question for county offices an absolute title, as to the undivided one half thereof, vested in the heirs of John Buck, deceased, by reverter."

The claim of the plaintiffs in the present case is for their undivided portion of the land in question. An adjudication in this matter will not directly affect legally the interest of the omitted heirs or deprive them of any rights or remedies. It is my conclusion that the interest of other heirs, not made a party hereto, is not such a "joint interest" as is contemplated under rule 19(a).

As between those already parties hereto, a complete adjudication may be had upon the merits without the necessity of joining other persons not already made parties, hence they are not necessary or indispensable. Sauer v. Newhouse, D.C.N.J., 1938, 24 F.Supp. 911.

Since, therefore, persons not joined had not a "joint interest" with the plaintiffs, nor were they necessary or indispensable parties, I find that federal jurisdiction has been completely invoked.

Judgment in favor of the defendants.